Marjorie G. HICKEY, Leona Connelly and Bernard Keegan, et al., Plaintiffs–Appellees,

v.

CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UN-ION, Defendant–Appellant.

No. 90–3616.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1991.

Decided Nov. 24, 1992.

---

**466**

Thomas H. Geoghegan (argued), Leon M. Despres, R. Edward Wilhoite, Jr., Despres, Schwartz & Geoghegan, Chicago, Ill., for plaintiffs-appellees.

Joseph M. Burns, Martin J. Burns, Stephen B. Horwitz (argued), Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for defendants-appellants.

Before CUMMINGS and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Marjorie Hickey and other current and retired employees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union and two funds maintained by the Union, brought an action against the three employers for the reduction of accrued benefits under the employer's Staff Retirement Plan ("the Plan") in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(g)(1) (1984). The district court granted partial summary judgment in favor of the employees, holding that the Cost-of-Living Adjustment ("COLA") prescribed by the Plan was an accrued benefit and, therefore, its elimination was a decrease of the accrued benefit in violation of ERISA. *Hickey v. Chicago Truck Drivers, Helpers & Warehouse Workers Union,* No. 88 C 8696, 1989 WL 86768, 1989 U.S.Dist. LEXIS 8126 (N.D.Ill. June 7, 1989). The district court later entered a final judgment ordering that the defendant employers resume payment of the COLA to those participants who retired prior to January 1, 1986, commence payment to all other participants as of their date of actual retirement, pay damages to retired participants for the lost amounts of COLA benefits, and place $1 million in escrow for the payment of future COLA benefits. *Hickey,* No. 88 C 8696 (N.D.Ill. Nov. 2, 1990).

The defendants now appeal, arguing that (1) the COLA is not an accrued benefit under ERISA and (2) even if the COLA is an accrued benefit, it was eliminated at the termination of the Plan, and thus the accrued benefit was not "decreased by an amendment of the plan," as provided in Section 1054(g) of ERISA. Therefore, defendants argue that elimination of the COLA did not violate ERISA.

I.

In 1961, the Union created a pension plan to provide retirement benefits to any employee who wished to participate. Hickey and other past and present employees were Plan participants. In 1973, defendants amended the Plan to add a COLA to all retirement benefits. The amendment pro-

vided that if the Consumer Price Index ("CPI") increased in any year following a participant's retirement, then the monthly benefit would be increased accordingly, thus preventing a reduction in the real value of the benefits.

Article IV of the Plan prescribed a formula for computing a participant's monthly accrued benefit, based on his months of service and compensation. Article IVA provided that on each anniversary of a participant's retirement, the participant's monthly benefit was to be multiplied by an adjustment factor. The adjustment factor depended upon the increase in the CPI over the prior year. The adjustment could not exceed 10% per year with an individual lifetime cap of 200%.

Section 4A.02(b) provided that there would be no further change in the monthly benefit after termination of the Plan. This provision dates from 1976.

In 1987, the Plan was terminated without providing funding for future increases in the cost-of-living. Hickey and several other Plan participants brought this action to prevent defendants from eliminating the COLA. They argue that the COLA is a part of the monthly accrued retirement benefit and, as such, the COLA could not be eliminated without decreasing the accrued benefit, in violation of 29 U.S.C. § 1054(g)(1).

The district court examined the pertinent legislative history and concluded:

> The legislative history contrasts accrued benefits with ancillary benefits. Accrued benefits include pensions and retirement benefits, as well as those benefits that do not generally accompany employees as they move from one employer to the next. Ancillary benefits, by contrast, include medical or life insurance, and generally are provided by subsequent employers. The "primary function" of accrued benefits is to "provide retirement income." As such, accrued benefits do not encompass

such items as the value of the right to receive benefits commencing at an age before normal retirement age, or so-called social security supplements which are commonly paid in the case of early retirement but then cease when the retiree attains the age when he is entitled to receive current social security benefits....

H.R.Rep. N. 93–807, 93d Cong.2d Sess. 60 (1974), *reprinted in* II Legislative History at 3180. The COLA is an accrued benefit: its primary purpose is to provide retirement income, it commences only at retirement, and it is not a benefit generally transferable to succeeding employers.

Judge Hart also relied on *Shaw v. International Ass'n of Machinists and Aerospace Workers Pension Plan*, 750 F.2d 1458 (9th Cir.), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985). He found *Shaw* indistinguishable, as do we.

## II.

In reviewing a district court's grant of summary judgment, we review *de novo* the record and the controlling law. *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688 (7th Cir.1992). There are no relevant contested issues of fact in this case, and therefore, this court must only determine whether the law was correctly applied to the facts. *See Cattin v. General Motors Corp.*, 955 F.2d 416, 421 (6th Cir.1992).

ERISA provides, "[T]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in Section 1082(c)(8) or 1441 [1] ..." 29 U.S.C. § 1054(g)(1) (1984). The issue in this case is whether the COLA is a part or element of the accrued benefit. If it is, then defendants violated Section 1054(g)(1) in eliminating it. Congress did not mandate a minimum level of retirement benefits but, instead, left the level of benefits to be determined by the parties and described in the Plan. *Alessi v. Raybestos–Manhattan,*

---

**1.** The parties have not argued that Sections 1082(c)(8) or 1441 have any application to this

dispute.

*Inc.*, 451 U.S. 504, 511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981). ERISA protects the benefits described in the Plan by ensuring that, if a pensioner is promised a benefit and fulfills the conditions required to receive it, the pensioner will actually receive the described and promised benefit. *Nachman v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980).

■ The term "accrued benefit" has a statutory meaning, and the parties cannot change that meaning by simply labeling certain benefits as "accrued benefits" and others, such as the COLA, as "supplementary benefits." An accrued benefit is, "in the case of a defined benefit plan, ... an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23) (1984).[2] We first determine what Congress meant by this definition, and then examine the Plan, as a whole, to determine which benefits created by the Plan fall within that definition.

The legislative history gives some indication of what Congress intended by the term "accrued benefit." The House Conference Report explains,

> Under the conference substitute, the term "accrued benefit" refers to pension or retirement benefits. The term does not apply to ancillary benefits, such as payment of medical expenses (or insurance premiums for such expenses), or disability benefits ... or to life insurance benefits ...
>
> Also, the accrued benefit does not include the value of the right to receive early retirement benefits, or the value of social security supplements or other benefits under the plan which are not continued for any employee after he has attained normal retirement age.

H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 60, *reprinted in* 1974 U.S.C.C.A.N. 5038, 5054.

The Conference Report first defines the term "accrued benefit" as pension or retirement benefits. Viewing the Plan as a whole, the COLA is an essential element of the normal retirement benefit. The COLA ensures that the retirement benefits will not diminish in real value over time. It provides the additional retirement income each month that is necessary to maintain the value of the retirement benefits.

The report also sets out two categories of benefits that Congress excluded from the scope of the term "accrued benefits." These are ancillary benefits and benefits discontinued after normal retirement age. Ancillary benefits are, for example, medical or life insurance or disability benefits. "[W]here the employee moves from one employer to another, the ancillary benefits (which are usually on a contingency basis) would often be provided by the new employer, whereas the new employer normally would not provide pension benefits based on service with the old employer." H.R.Rep. No. 807, 93d Cong., 2d Sess. 60, *reprinted in* 1974 U.S.C.C.A.N. 4670, 4726. In contrast, the COLA was inseparably tied to the monthly retirement benefit as a means for maintaining the real value of that benefit. It could not, therefore, be said to be ancillary to the benefit, and it would not be provided by a new employer. A new employer would not be any more likely to provide a COLA benefit for retirement benefits based upon service to a former employer than to provide base retirement benefits for that past service.

■ The COLA clearly does not fall within the second type of benefits excluded from the scope of the term "accrued benefit," benefits which are not continued after normal retirement age.

The Ninth Circuit interpreted the ERISA legislative history in substantially the same way in *Shaw.* The *Shaw* plan set out the following formula for computing the monthly retirement benefit: 2.5% × years of credited service × final monthly salary. The plan also included a "living pension" feature which provided for adjustment of the benefit after retirement by substituting in the formula the current monthly salary of the retiree's old job in place of the

---

**2.** Defendants' Plan is a defined benefit plan.

retiree's final monthly salary. *Id.* at 1460. The *Shaw* court found that the "living pension" feature fit more comfortably within the definition of an accrued benefit than within the enumerated excluded benefits. "The feature is a 'pension or retirement benefit[ ]'; it primarily provides retirement income; and it is not generally transferrable from one employer to another. The living pension feature does not fit within any of the enumerated categories of ancillary or nonaccrued benefits." *Id.* at 1463–64.

The "living pension" feature was strikingly similar in principle to the COLA provision. Neither the "living pension" feature nor the COLA were included in the base benefit formula. However, each operated upon that benefit formula to cause an adjustment to the retirement benefits. The Ninth Circuit reasoned, "[T]he living pension 'adjust[s]' the basic formula for determining benefits at normal retirement, rather than providing a separate, unfunded, optional plan like medical coverage or early retirement. It describes the multiplicand; it does not provide a separate formula or benefit." *Id.* at 1464.

The COLA similarly adjusted the computed benefit rather than providing a separate optional benefit. A participant's right to have his basic benefit adjusted for changes in the cost-of-living accrued each year along with the right to the basic benefit. A participant's entitlement to his or her normal retirement benefit included, as one component, the right to have the benefits adjusted pursuant to the COLA provision. In describing the Plan in the Summary Plan Description, distributed to Plan participants, the defendants listed three components of the "normal retirement benefit," future service credit, past service credit, and cost-of-living benefits. The Summary Plan Description explained that the COLA would increase the monthly benefits to reflect changes in the cost-of-living. (Jt. Ex. 1 at 4–5.) Thus the summary, itself, treated the COLA as part of the normal benefit rather than a separate unguaranteed benefit.

The Supreme Court has stated that the courts should look to the views of the agencies responsible for interpreting ERISA, the PBGC and the IRS, in determining what benefits qualify as accrued benefits. *Mead Corp. v. Tilley,* 490 U.S. 714, 726, 109 S.Ct. 2156, 2164, 104 L.Ed.2d 796 (1989). In *Mead,* the Court was referring to regulations promulgated by the PBGC and the IRS. The defendants, on the other hand, argue that we should give deference to an IRS determination letter and an informal PBGC letter. The PBGC letter at most implied, although it did not state, that a COLA provided by a plan might be terminated. The IRS determination letter approved the defendants' application for continued qualification of the Plan under 26 U.S.C. § 401 after a 1983 amendment eliminating the COLA, an amendment which was never implemented until termination of the Plan. The letter expressly limited its applicability to the Plan's status under the Internal Revenue Code. Neither letter included any discussion of the reasoning employed by the agency in reaching its conclusions. Given the informal nature of these letters, the express limitations included in the IRS letter, and the absence of any reasoning to explain the basis for the statements, we do not think that any implication in either of these letters that elimination of the COLA was lawful is entitled to deference. *See Shatto v. Evans Products Co.,* 728 F.2d 1224, 1228 n. 2 (9th Cir.1984) (IRS determination entitled to no deference because based on limited evidence.)

Defendants argue that the COLA was an unfunded benefit, and as such, it could not be an accrued benefit. ERISA sets out minimum funding standards for pension plans at 29 U.S.C. § 1082. The question of whether defendants complied with these standards is not the issue. Accrued benefits must be funded, but the fact that a benefit was unfunded does not necessarily mean that the benefit was not accrued.

Defendants cite *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.,* 724 F.2d 406 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984), in support of their argument that only funded benefits can be accrued benefits. In *Sut-*

470

*ton,* the Fourth Circuit held that certain early retirement and severance pay benefits were not accrued benefits. In so holding, the court stated, "[T]he accrued benefits secured by ERISA do not encompass unfunded, contingent early retirement benefits or severance payments." *Id.* at 410. The early retirement and severance pay benefits were, in fact, not funded under the Plan. However, the court's decision was based upon its reading of the ERISA legislative history as indicating that Congress intended to exclude such ancillary benefits. *Id.* The court's decision did not turn upon the funded or unfunded nature of the benefits, and the reference to funding was not necessary to the reasoning employed by the court.

The plaintiffs argue that, even if the COLA is not an "accrued benefit," it is a retirement-type subsidy and, therefore, cannot be eliminated under 29 U.S.C. § 1054(g)(2) (1984). Since we hold that the COLA is a part of the "accrued benefit" and was improperly eliminated in violation of Section 1054(g)(1), we do not reach the question of whether the COLA would qualify as a retirement-type subsidy.

### III.

Defendants argue on appeal that, even if the COLA is an "accrued benefit," the Plan's termination did not qualify as an amendment of the Plan and, therefore, is not prohibited by Section 1054(g)(1). Section 1054(g)(1) proscribes a decrease of the accrued benefit "by an amendment of the plan."

Defendants, however, did not argue this theory to the district court. In their reply brief to this court, they asserted that the argument was made to the district court and cited two locations in the record. At those record locations, defendants did refer to the provision in Article IVA, providing for termination of the COLA upon termination of the Plan, but in the context of arguing that the parties did not intend for the COLA to be a part of the accrued benefit. We have examined the record, including the citations given by the defendants, and cannot find any legal argument

to the effect that the elimination of the COLA was not accomplished by amendment. Neither the defendants' response to the motion for summary judgment (R. at 30) nor their motion for reconsideration (R. at 56) addressed this argument. Furthermore, they never cited *Dooley v. Amer. Airlines, Inc.,* 797 F.2d 1447 (7th Cir.1986), *cert. denied,* 479 U.S. 1032, 107 S.Ct. 879, 93 L.Ed.2d 833 & 479 U.S. 1087, 107 S.Ct. 1292, 94 L.Ed.2d 149 or *Stewart v. Nat'l Shopmen Pension Fund,* 730 F.2d 1552 (D.C.Cir.), *cert. denied,* 469 U.S. 834 (1984), the cases on which they now base their argument. Failure to present an argument to the district court waives that argument on appeal. *Gray v. Lacke,* 885 F.2d 399, 409 (7th Cir.1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); *Maciosek v. Blue Cross & Blue Shield,* 930 F.2d 536, 540 n. 2 (7th Cir. 1991). We note, but need not address, plaintiffs' arguments alternative to their waiver argument on this point.

The judgment of the district court is Affirmed.