989 F.2d 502
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Max BELL, James Goodloe, James W. Miller, et al.,
Plaintiffs-Appellants,
v.
LAY TRUCKING COMPANY, INCORPORATED and Jack Lay, Defendants-Appellees.
 No. 92-1911.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 29, 1992.
Decided March 12, 1993.
 
 Before FLAUM, RIPPLE and MANION, Circuit Judges.
 
 ORDER
 
 1
 Since 1981 Lay Trucking Company, Inc. and their retiress became entangled in disputes over retirement benefits. Two federal lawsuits have arisen. In 1985 the retirees unsuccessfully sued for greater benefits. Thereafter, the parties changed retirement plans. In 1990 the retirees' pension benefits were terminated altogether, and this second suit followed. At the time of termination, the pension plan then in effect permitted the employer to discontinue funding the plan; however, the retirees argue that the previous federal lawsuit between the parties established that the employer would not lower their benefits. The district court rejected the retirees' arguments, and we affirm.
 
 I. Background
 
 2
 Max Bell, James Goodloe, James W. Miller, John A. Miller, William M. Schmidt and Neal T. Zentmire (the "appellants") are retired employees of defendant Lay Trucking Company, Inc. Defendant Jack Lay is part-owner and serves as the company president (collectively "Lay"). When they were active employees the appellants were represented by the General Teamsters, Chauffeurs and Helpers Union, Local 298. As retirees, prior to 1979 the appellants received benefits under the Teamsters Pension Plan, administered by the Teamsters Central States Pension Fund (the "Teamsters Plan"). In 1979 Lay desired to change pension plans. After extensive negotiation, then current Lay employees and the appellants agreed to transfer from the Teamsters Plan to a private plan, administered by Bankers Life Company (the "Bankers Plan").
 
 
 3
 In 1981 the employees received benefit display sheets that showed a substantial decrease in their monthly benefits: The Bankers Plan was about one-half of the Teamsters Plan benefits. The employees and appellants filed suit in the United States District Court for a declaratory judgment concerning the amount of benefits to which they were entitled. See Miller v. Lay Trucking Co., No. S82-495 (N.D.Ind., April 9, 1985) (the "1985 lawsuit"). After a bench trial, the court found for the defendants on all counts. Shortly after the litigation ended, Lay notified the employees that the Bankers Plan would be terminated in July 1985, due to insufficient assets to fund the accrued benefits. Thereafter, Lay appointed the Pension Benefit Guarantee Corporation ("PBGC") as trustee of the Bankers Plan. Although the Bankers Plan was terminated, the PBGC continued to pay the appellants full benefits until July 1990, when the PBGC notified the appellants that their pension benefits were not fully guaranteed and would be retroactively reduced. In this litigation the appellants seek to recover from Lay the difference between the amount paid by PBGC and the amount appellants would have received under the Teamsters Plan. Although the appellants agreed to discontinue the Teamsters Plan in 1979, they argue that Lay promised that the level of benefits under the Teamsters Plan would never be reduced.
 
 II. Jurisdiction
 
 4
 Lay asserts that we have no subject matter jurisdiction to hear this appeal. However, in this case the pertinent statutory authorization proceeds from 29 U.S.C. § 1132, an enforcement provision of the Employee Retirement Income Security Act ("ERISA"), and 28 U.S.C. § 1332.
 
 
 5
 A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
 
 
 6
 29 U.S.C. § 1132(a)(1)(B).
 
 
 7
 Throughout the pleadings and oral argument before this court, the appellants have not contested the validity or the enforceability of the contract originally agreed upon under the Bankers Plan. The appellants complained only that they were entitled to greater benefits, based on a sentence in a previous (30-page) district court opinion which they claim memorialized Lay's promise that their benefits would never be reduced below the amounts guaranteed in the 1979 Teamsters Plan. This case thus involves an interpretation of the impact of the 1985 lawsuit and whether Lay promised to guarantee a minimum level of pension benefits. Lay insists that appellants' claim is based on nothing more than an alleged oral promise to continue certain benefits, while the appellants assert this case involves the continuing right to receive the same level of accrued benefits as under a previous pension plan. These varying interpretations appear to provide a federal claim.
 
 
 8
 In a similar case the Third Circuit found jurisdiction to consider whether the employees could collect additional benefits directly from the employer. In Murphy v. Heppenstall Company, 635 F.2d 233, 234 (3d Cir.1980), cert. denied, 454 U.S. 1142 (1982), retired employees sued their employer to recover the difference between the pension amounts guaranteed by PBGC and the amounts provided for in the separate pension agreement between their union and employer. Although the retirees had vested benefits, the PBGC was only liable to the extent the employer had funded the benefits. Id. at 235. Thus, the retirees used the collectively bargained pension agreement, rather than the pension plan itself, to show that the employer was directly obligated for the retirees' pension, although the employer had not adequately funded the pension plan. Id. at 236. The Third Circuit accepted jurisdiction where
 
 
 9
 to enforce rights under a pension plan, the employees argued the terms of the pension agreement obligated the employer itself, rather than a fund or an insurer, to pay pension benefits even after termination or expiration of the agreement.
 
 
 10
 Id., at 234-35. Even accepting Lay's statement of the issue--that this case involves only an alleged oral promise to continue benefits associated with an expired pension plan--the appellants are entitled in a federal forum to "recover benefits due to [them] under the terms of [the] plan," 29 U.S.C. § 1132(a)(1)(B), whether the plan involves the Teamsters Plan, the Bankers Plan, the PBGC, or a private, contractual agreement between Lay and the appellants. Thus, we have jurisdiction to entertain the present case.
 
 III. Discussion
 
 11
 In 1977 Lay became concerned over the financial costs of the Teamsters Plan. Lay sought to convert to a private pension plan, which ultimately led in 1979 to the appellants and Lay agreeing on the Bankers Plan. By 1982 the parties disputed the monthly benefit amounts. In 1985 the retirees sued Lay in order to increase the amount of benefits they were to receive under the Bankers Plan. The district court in the present case characterized the plaintiffs' 1985 lawsuit as follows:
 
 
 12
 Plaintiffs [retirees] argue that the failure of defendants [Lay] to honor their commitment to pay benefits at the levels found in the July 1979 benefit display sheets given to each plaintiff as an inducement to vote for a plan change constituted a breach of the pension contract entered into by the parties. Plaintiffs also contend that the promised benefit levels given each plaintiff by Lay Trucking and Bankers Life were given with the knowledge that they would not be honored or with a reckless disregard for their accuracy. As a result it is alleged that plaintiffs were fraudulently induced to switch plans. Finally, plaintiffs assert that the actions of defendants in this regard are in breach of their fiduciary duties and violate both ERISA and state and federal common law.
 
 
 13
 Simply put, in the 1985 lawsuit the retirees sued for a declaratory judgment that Lay was obligated to pay greater benefits under the Bankers Plan as compared to the previous Teamster Plan.[1] That court concluded that Lay did not breach any fiduciary duty to the appellants nor had Lay guaranteed that the Bankers Plan would pay higher benefits than the Teamsters Plan. In this case the appellants are suing on a contractual, rather than a fiduciary duty, theory of relief. The district court granted summary judgment to Lay, concluding that the previous judgment in the 1985 lawsuit did not assist the appellants in resurrecting the nonforfeiture provisions or benefits of the Teamsters Plan. We review that decision de novo. Hickey v. Chicago Truck Drivers, 980 F.2d 465, 467 (7th Cir.1992).
 
 
 14
 As a preliminary matter, we note the written contracts that detail Lay's contractual obligations. The Teamsters Plan, in effect until 1979, provided the following pertinent language concerning plan termination and the vesting of employee benefits:
 
 
 15
 (a) It is the intention of the Trustees that this Pension Plan shall continue to operate in full force and effect. However, the Trustees reserve the right to terminate this Pension Plan in whole or in part.
 
 
 16
 (b) In the event of full or partial termination of this Plan assets of the Pension Fund shall be allocated among Participants and Beneficiaries in the manner set forth in the trust Agreement and the rights of the Employees to benefits accrued to the date of said full or partial termination shall, to the extent then funded, be non-forfeitable.[2]
 
 
 17
 Under the Bankers Plan, in effect from 1979 to 1985, the pertinent language reads:
 
 
 18
 The Employer expects to continue the Plan indefinitely but reserves the right to terminate the Plan in whole or in part at any time upon giving written notice to all parties concerned.... A Participant's recourse towards satisfaction of his right to his forfeitable Accrued Benefit will be limited to the Plan assets and the Pension Benefit Guaranty Corporation.
 
 
 19
 As this language illustrates, when the retirees transferred from the Teamsters Plan to the Bankers Plan, Lay received the right to terminate the plan. Although the appellants are suing on a contractual theory of relief, they do not point to specific language in the Teamsters Plan or the Bankers Plan to show that Lay obligated itself to pay full pension benefits to the appellants for life. See International Union v. Keystone Consol. Indus., 793 F.2d 810, 813-14 (7th Cir.), cert. denied, 479 U.S. 932 (1986). Rather, in this case the appellants concede (as they did at oral argument in the district court's summary judgment hearing) that their case "stands or falls on their interpretation of Judge Sharp's order." Thus, an interpretation of the 1985 lawsuit is dispositive of this case. Under ERISA, the language of the pension plans does not conclusively dictate the amount of pension benefits guaranteed by the employer.
 
 
 20
 It is not inconsistent with the statutory scheme to permit employees to recover directly from the employer any additional benefits to which the employer has contractually obligated itself.... [N]othing in ERISA, nor in its legislative history, nor in the views expressed by the government corporation charged with administering ERISA-guaranteed pension payments discountenances direct contractual recovery of pension benefits from the employer.
 
 
 21
 Murphy, 635 F.2d at 239. Thus, we will address the appellants' argument that Lay otherwise obligated itself to pay additional benefits.
 
 
 22
 In the 1985 lawsuit the district court used the following reasons in denying the retirees a declaratory judgment:
 
 
 23
 In searching for an alternate plan, Lay had committed himself to duplicating the present and future defined benefit of the Teamsters union. Therefore, he and Kessler determined that they were going to adhere to the defined benefit established by the Teamsters Plan C-5 and improve the internal benefits such as vesting, break-in service and retirement options.
 
 
 24
 In concluding, the court stated that it was
 
 
 25
 hard pressed to identify the detriment suffered by plaintiffs. By adopting the Bankers Life plan, the drivers received the same monthly payment as under the Teamsters Central States plan and better additional benefits with respect to vesting and retirement requirements and benefits to spouses upon retirement to name but a few.
 
 
 26
 The appellants now contend that this language by the district court in the 1985 lawsuit conclusively establishes that Lay was committed to maintain the level of benefits guaranteed in the Teamsters Plan.[3]
 
 
 27
 We reject the appellants' position for several reasons. First, we agree with the district court that the fact that Lay "committed himself to duplicating" certain benefits reflects language of intent, not a promise. Lay's intentions were directly relevant in the 1985 lawsuit because it involved an alleged breach of fiduciary duty. In fact, the issue of whether Lay promised to maintain certain benefits never arose in the 1985 lawsuit. Appellants cite no case where intentions alone conclusively establish contractual obligations.[4] Second, even if Lay had committed himself to duplicating the Teamsters Plan benefits, the appellants neither allege nor evidence that Lay intended to duplicate those benefits indefinitely. Third, the appellants misconstrue the ultimate effect of the 1985 lawsuit. They assert that "Under the Declaratory Judgment, it was Lay Trucking Company's obligation to duplicate the [Teamsters] Plan benefits upon termination." Concerning the district court's ruling in this case, the appellants argue that the fact that they are not entitled to the Teamsters Plan benefits "is contrary to the plain meaning of Judge Sharp's Declaratory Judgment." But Judge Sharp never issued a declaratory judgment. The appellants sued for one, but Judge Sharp ruled against them.
 
 
 28
 From the appellants' perspective, their singular focus, boiled down, is that Lay is trying to take advantage of inconsistent defenses. In the 1985 lawsuit, the appellants wanted higher benefits under the Bankers Plan and the court denied them relief. The appellants interpret Lay's defense in that matter as showing the court that although the Bankers Plan did not provide the appellants with the higher benefits they expected, the Bankers Plan was still as good, if not, better than the Teamsters Plan. In this lawsuit, Lay's defense is that they had the contractual right under the Bankers Plan to terminate benefits. Through hindsight, perhaps the appellants would have been better off under the Teamsters Plan rather than under the Bankers Plan. But contracts are not made through hindsight.
 
 IV. Conclusion
 
 29
 For the foregoing reasons, the district court properly rejected the appellants' arguments, and is hereby
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 The district court found that the "vesting requirements, retirement age qualification, absence of a 'non-compete' clause, and spousal benefits were all better than the same benefits under the Teamsters Plan."
 
 
 [2]
 The parties and the district court have assumed that the appellants are entitled to lifetime benefits under the Teamsters Plan. We accept such an assumption but disclaim any comment that the cited language in the Teamsters Plan guarantees appellants a lifetime pension
 
 
 [3]
 Neither in their briefs, nor at oral argument before this court, did the appellants argue an estoppel theory, fraud on the court, issue preclusion, res judicata, theory of the case, nor did they argue that the current plan being administered by PBGC is not enforceable. The appellants contend only that the district court's language in the 1985 lawsuit conclusively establishes that Lay was committed to maintaining the level of benefits guaranteed in the Teamsters Plan. The complaint, for example, nowhere alleges that a certain identifiable person promised in any way to maintain the Teamsters Plan benefits. Rather, the complaint rests on the 1985 district court opinion that states "Lay had committed himself to duplicating the present and future defined benefit of the Teamsters" Plan
 
 
 [4]
 If Lay were indeed obligated to maintain the Teamsters Plan benefits, the appellants have not identified from the usual sources where such an obligation could arise: The Teamsters Plan? The Bankers Plan? A collective bargaining agreement? Or a separate oral agreement between Lay and the appellants? Rather, the appellants seem to see the 1985 lawsuit as a contract in itself