26 F.3d 132
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 SAN DIEGO AFL-CIO BUS DRIVERS LOCAL DIVISION 1309 OF THE
AMALGAMATED TRANSIT UNION, Plaintiff-Appellant,
v.
SAN DIEGO TRANSIT CORPORATION, Defendant-Appellee.
 
 Nos. 93-55108, 93-55831.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 6, 1994.
Decided May 19, 1994.
 Before: BROWNING, PREGERSON, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 San Diego AFL-CIO Local 1309 (the Union) appeals the District Court's November 16, 1991 decision to grant the San Diego Transit Corporation's (the SDTC's) motion to confirm an arbitration award in SDTC's favor. In a separate appeal, the Union appeals the District Court's May 20, 1993 decision to grant the SDTC's motion for summary judgment and deny the Union's motion for summary judgment. These appeals have been consolidated at the request of the parties. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm both decisions.
 
 STATEMENT OF THE CASE
 
 3
 Appellant San Diego AFL-CIO Bus Drivers Local Division 1309 of the Amalgamated Transit Union (the Union) and Appellee San Diego Transit Corporation (SDTC) have a longstanding collective bargaining relationship. The issues in this case center around a dispute between the Union and SDTC over the interpretation of a Cost of Living Allowance (COLA) provision for participants in the union's retirement plan.
 
 
 4
 On December 31, 1988, the then-existing collective bargaining agreement and retirement plan between the Union and SDTC were due to expire. On December 28, 1988, the parties agreed to extend their agreement to January 31, 1989, and day-to-day thereafter, absent notice of intent to terminate, which notice was never served.
 
 
 5
 An impasse developed in the negotiations for a new contract. The Union filed a complaint pursuant to Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a) to compel arbitration. On August 17, 1989, the District Court issued an order directing interest arbitration on all unresolved issues. A tripartite panel, with two appointees each from the Union and SDTC and a neutral arbitrator as Chairman, heard argument on the issues. On November 27, 1990, by a vote of three to two, the Chairman issued for the panel the interest Arbitration Award (IAA), which became effective on December 1, 1990.
 
 
 6
 Two weeks later, the Union petitioned the Chairman of the panel for correction and clarification of four issues in the IAA. Over strong objections by SDTC, the Chairman adjusted the award and issued a ruling on January 4, 1991. (This ruling is hereinafter referred to as the "supplemental award.") The Union then moved the District Court to confirm the "corrected award" (a combination of the original award and the supplemental award). SDTC moved to confirm the original award and vacate the supplemental award.
 
 
 7
 Following a hearing, on April 23, 1991, the District Court granted SDTC's motion and denied the Union's motion. On appeal, this court affirmed by memorandum disposition the District Court's decision in its entirety, ruling that the interest arbitration panel overstepped its bounds in redetermining issues that had been finally ruled upon in the original award. Thus, SDTC and the Union became bound by the terms of the original interest arbitration award.
 
 
 8
 The issue which is the centerpiece of this appeal arose while the Union and SDTC were in the process of litigating the Union's petition to correct. Under the terms of the Retirement Plan for the Union contract employees of SDTC (the Plan), SDTC and the Union delegated the responsibility of administering the Plan to a six-member board. Three members were selected by SDTC and three were selected by the Union. Pursuant to the terms of the Plan, if the board reached a deadlock in administering the Plan, the deadlock was to be resolved through arbitration which was final and binding.
 
 
 9
 At the January 14, 1991 retirement board meeting, the members deadlocked on several issues concerning the interpretation of a provision of the IAA which granted retirees a COLA. The provision at issue stated: "There shall be an annual COLA provided retirees." No dates were specified for its implementation. SDTC had paid the retirees' COLA prospectively from the effective date of the IAA. The issue was whether SDTC had to pay the COLA for the years 1989 and 1990 (before the IAA had been issued), and for 1993 and each year thereafter, despite the fact that the IAA expired by its own terms in 1992.
 
 
 10
 In an effort to resolve the dispute, the Union first requested arbitration under the terms of the Plan. Rather than proceeding to arbitration, however, on April 5, 1991, the Union sought declaratory judgment in the District Court that the Plan was subject to the Employee Retirement Income Security Act (ERISA) and thus that the COLA provision in the IAA was an accrued benefit under ERISA which could only be removed in accordance with the statute.
 
 
 11
 On June 10, 1991, SDTC filed a motion for summary judgment or, alternatively, motion for judgment on the pleadings or, alternatively, for stay of the proceedings pending arbitration. By Memorandum Decision and Order, on July 29, 1991 the District Court granted SDTC's motion for stay of the proceedings pending arbitration. In this order the District Court noted that the COLA provision was an issue appropriate for arbitration under the terms of the Plan.
 
 
 12
 On March 18 and 19, 1992, the dispute proceeded to arbitration before impartial umpire Murray Geller.[1] Several witnesses testified, counsel for both parties presented numerous arguments, and over seventy-five exhibits were introduced into evidence. Following the hearing, the Union and SDTC filed post-hearing briefs. By Opinion and Award dated August 10, 1992, umpire Geller decided the four issues to which the parties had stipulated before the hearing.
 
 
 13
 1.) The IAA did not require a COLA adjustment for retirees effective January 1, 1989.
 
 
 14
 2.) The IAA did not require a COLA adjustment for retirees effective January 1, 1990.
 
 
 15
 3.) The IAA did not require a COLA adjustment in January, 1993, or January of each year thereafter.
 
 
 16
 4.) A retiree did not need to be retired for at least one year prior to the date of a COLA adjustment to be eligible for that COLA adjustment.
 
 
 17
 On August 24, 1992, SDTC moved to confirm the Geller arbitration award. The motion was made pursuant to Sec. 301 on the grounds that the arbitrator acted within the scope of his authority, the award drew its essence from the IAA and Plan between the parties, and the award did not violate public policy. The District Court affirmed the award by order filed November 16, 1992, on the basis urged by SDTC. The Union appealed this decision to the Ninth Circuit on December 11, 1992. This forms the basis of the first of two appeals now before this court.
 
 
 18
 Following the District Court's issuance of its order granting SDTC's motion to confirm the arbitration award, SDTC and the Union filed cross-motions for summary judgment. After extensive briefing and oral argument, the District Court issued its Memorandum Decision and Order on May 20, 1993, granting SDTC's motion for summary judgment and denying the Union's motion for summary judgment.
 
 
 19
 The District Court ruled in favor of SDTC on two of the three issues now before this court.[2] Specifically, the District Court held that SDTC's retirement plan is a governmental plan exempt from ERISA pursuant to 29 U.S.C. Sec. 1002(32). In addition, the District Court found that the COLA was not an accrued benefit within the meaning of ERISA pursuant to 29 U.S.C. Sec. 1054(g).
 
 ANALYSIS
 1. COLA PROVISION AS AN ACCRUED BENEFIT
 
 20
 In its briefs, the Union frames the COLA issue as whether the COLA provision, which the Union contends is an accrued benefit under ERISA, may be terminated under the circumstances presented here. SDTC, however, focuses on whether the COLA provision is an accrued benefit at all.
 
 
 21
 Each of the arguments raised by the Union attempts to reach the goal of obtaining a perpetual annual COLA for its retirees--a goal the Union was unable to obtain through binding arbitration or the District Court. The first appeal filed by the Union contends that the District Court erred in confirming umpire Geller's arbitration award. Our review of the arbitration award is limited. A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 970 (1993). We will not set aside an award unless it manifests a complete disregard for the law. Id.; Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1060 (9th Cir.1991) (citing the "Steelworkers Trilogy"). Moreover, "[t]he courts should not reverse even in the face of erroneous interpretations of the law." A.G. Edwards, 967 F.2d at 1403.
 
 
 22
 The second appeal, also filed by the Union, contends that the District Court erred in granting SDTC's motion for summary judgment and denying the Union's motion for summary judgment. We review the District Court's grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the District Court correctly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992). We do not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. Id.
 
 
 23
 The Union asserts that the District Court erred in stating "in dicta" that ERISA does not require the "preservation of the previously granted COLA." The Union further states that the District Court "volunteered its opinion with respect to the COLA as an accrued benefit," and erred in not finding that "[t]he COLA provision provided in the Interest Arbitration Award is an accrued benefit and therefore subject to removal only in accordance with [ERISA] 29 U.S.C. Sec. 1054(g)."
 
 
 24
 These statements mischaracterize the District Court's ruling and the facts and law of this case. As District Judge Gilliam stated most succinctly:
 
 
 25
 Most of the issues raised in these motions have previously been brought before the court. The disputes involved in this case went to arbitration by order of this court. Umpire Geller issued his Opinion and Award on August 10, 1992, specifically finding that the COLA adjustment in question expired December 31, 1992. This court confirmed Umpire Geller's Opinion and Award on November 2, 1992. As a result, the question of whether the COLA was intended to be of perpetual duration has already been adjudicated. This court, in confirming Umpire Geller's award, has already determined that the COLA adjustment expired December 31, 1992. Consequently, any COLA which allegedly applies any time after the December 1992 date cannot be an accrued benefit protected by ERISA under 29 U.S.C. Section 1054(g).
 
 
 26
 (Memorandum and Decision Order, 5/20/93; ER at 152.)
 
 
 27
 First, the District Court's ruling regarding the Union's COLA provision claims was clearly not made in dicta; the decision states unequivocally that the Union's position is without merit. More to the point, however, the District Court's decision affirms the findings of fact and law as stated in umpire Geller's final and binding arbitration opinion, which supports the position taken by SDTC.
 
 
 28
 Under ERISA, an accrued benefit is a benefit which has been promised.
 
 
 29
 In the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age....
 
 29 U.S.C. Sec. 1002(23) (Emphasis added.)
 
 30
 The purpose underlying ERISA's protection of accrued benefits is protection of employee expectations. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510 (1981). Thus, an employer cannot take away a promised benefit after it was to have accrued.
 
 
 31
 In Alessi the Supreme Court established the framework for evaluating claims of forfeiture of benefits which are prohibited under ERISA. Although the Court stressed that accrued benefits are intended to protect employee expectations, the Court went on to note that the critical threshold question of "what defines the content of the benefit that, once vested, cannot be forfeited" must first be addressed. 451 U.S. at 511. The Court held that the answer to this question is to be found in the provisions of the retirement plan itself:
 
 
 32
 ERISA leaves this question largely to the private parties creating the plan. That the private parties, not the Government, control the level of benefits is clear from the statutory language defining nonforfeitable rights as well as from other portions of ERISA.
 
 
 33
 Id.
 
 
 34
 Applying the reasoning of Alessi to the present case, we find that the Union has failed to meet the threshold requirement. Umpire Geller determined, and the District Court affirmed the decision, that the interest arbitration board intended only to grant a COLA to retirees for 1991 and 1992. No COLAs were to be provided beyond that time and are thus not an accrued benefit under ERISA.
 
 
 35
 The Union looks to several in-circuit and out-of-circuit cases[3] for support of its assertion that the COLA provision in the Plan is an accrued benefit within the scope of ERISA under 29 U.S.C. Sec. 1054(g) which cannot be eliminated by SDTC. These cases are, as the District Court found, of little help. "Because they speak to already accrued benefits, the ... cases cited by [the Union] are therefore distinguishable and inapposite...." Thus, as the District Court stated in its most recent decision, "On these grounds alone, [the Union's] motion for summary judgment must be denied."
 
 
 36
 In sum, we find that the Union's arguments do not support its contention that SDTC improperly took away an accrued COLA from the Union's retirees. Final and binding arbitration determined, and the District Court confirmed, that the disputed COLA provision was not an accrued benefit. Thus, the COLA benefit expired at the end of the contract term.
 
 
 37
 Moreover, we find that the District Court's correct determination of the COLA provision issue properly precludes our consideration of all other arguments raised by the Union in the consolidated cases presently before us.
 
 
 38
 We AFFIRM.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Murray Geller, who has a background in both labor and pension law, was selected from a panel of seven arbitrators provided by the American Arbitration Association
 
 
 [2]
 The last issue addressed herein is raised on appeal for the first time
 
 
 [3]
 See Hickey v. Chicago Truck Drivers, 980 F.2d 465 (7th Cir.1992) (employer who promised a COLA to extend indefinitely into the future could not later eliminate it); Shaw v. Int'l Assn. of Machinists and Aerospace Workers Pension Plan, 750 F.2d 1458 (9th Cir.1985), cert. denied, 471 U.S. 1137 (1985) (protection for accrued benefits provided in ERISA are intended to ensure that if a worker has been promised a defined pension benefit, he would receive it). See also, Abbott v. City of Los Angeles 50 Cal.2d 438 (1958); Allen v. Long Beach, 45 Cal.2d 128 (1955); Kern v. Long Beach, 29 Cal.2d 848 (1947). These pre-ERISA cases stand for the general proposition that an employee's vested contractual pension rights may not be eliminated or reduced