James G. LAURENZANO, M.D., individually, and on behalf of all others similarly situated, Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. RETIREMENT INCOME TRUST, Defendant.

No. CIV.A. 99–11751–WGY.

United States District Court, D. Massachusetts.

March 27, 2001.

Allen C. Engerman, Law Offices of Allen C. Engerman, P.A., Northbrook, IL, Edward F. Haber, Shapiro, Grace & Haber, Boston, MA, Steven A. Katz, Karr, Korein, Tillery, Kunin, Montroy, Cates & Glass, Belleville, IL, Christine E. Morin, Shapiro, Grace, Haber & Urmy, Boston, Douglas A. Sprong, Carr, Korein, Tillery, Kunin, Montroy, Cates & Glass, Belleville, IL, for Plaintiffs.

Anthony A. Bongiorno, McDermott, Will & Emery, Boston, MA, Joseph D. Halpern, Blue Cross and Blue Shield of Mass., Boston, MA, Laura McLane, McDermott, Will & Emery, Boston, MA, James A. Paretti, Jr., McDermott, Will & Emergy, Boston, MA, Brian W. Robinson, McDermott, Will & Emery, Boston, MA, Nancy G. Ross, McDermott, Will & Emery, Chicago, IL,

F. Dennis Saylor, IV, Goodwin Procter LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

If a defined benefit pension plan normally provides retirement benefits in the form of a life annuity that includes a cost-of-living adjustment ("COLA"), must a lump sum distribution in lieu of the annuity include the present value of the projected COLA payments? This Court holds that it must, and that each participant in a plan that does not has approximately six years from the date of his distribution to seek redress.

## I. Background

### A. Summary of Complaint

James G. Laurenzano, M.D. ("Laurenzano") is a former employee of Blue Cross and Blue Shield of Massachusetts, Inc. During his employment, Laurenzano enrolled in a defined benefit pension plan (the "Plan") administered by Blue Cross and Blue Shield of Massachusetts, Inc. Retirement Income Trust ("Blue Cross").

Under the Plan, a participant's normal retirement benefit is a life annuity beginning at age sixty-five. This life annuity is increased every year to include a COLA payment that reflects changes in the Consumer Price Index.

Rather than receive a life annuity, Laurenzano elected to receive the present value of his pension in a single, lump sum distribution. When Laurenzano received his lump sum distribution, however, it did not include the present value of the projected COLA payments.

### B. Procedure

Laurenzano filed a class action complaint on August 19, 1999. This Court exercised jurisdiction over the case, 28 U.S.C. § 1331; 29 U.S.C. § 1132(e), and on February 3, 2000 certified a class comprising "[a]ll former participants in the [Plan] who received a lump sum distribution from the [Plan] which did not take into account a cost of living adjustment in calculating the lump sum distribution." Pl.'s Assented-to Mot. for Class Certification at 2. Now the parties have moved for judgment on the written record with respect to the question of liability, but not the question of damages or the effect of releases allegedly signed by certain class members. See Sched. Order at 1 (citing *Boston Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urban Dev.*, 768 F.2d 5, 10–12 [1st Cir.1985] ).

■ In effect, judgment on the written record is a bench trial without any witnesses. This highly-efficient procedural device allows a court to resolve factual disputes and enter judgment in one fell swoop. *Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 643–45 (1st Cir. 2000); *Smart v. Gillette Co. Long–Term Disability Plan*, 887 F.Supp. 383, 384 (D.Mass.), *aff'd*, 70 F.3d 173 (1st Cir.1995). In this case the facts are straightforward and the only dispute concerns the application of the law to the facts. The facts consist of (i) an affidavit by the Blue Cross Director of Employee Benefits, Debra Weafer; (ii) written documents that speak for themselves; and (iii) opposing expert reports.

## II. Facts

### A. The Plan

Section 1.1 of the Plan defines "Accrued Benefit" as "the amount determined in accordance with the applicable formula specified in Section 5.1," Pl.'s Ex. 1, § 1.1, and Section 5.1 of the Plan provides a formula for the "monthly Normal Retire-

ment Benefit" based on the participant's (i) final average compensation, (ii) Social Security benefit, and (iii) length of employment, *id.* § 5.1. Section 5.7 of the Plan, however, adds a COLA to certain Accrued Benefits while excluding the COLA from lump sum distributions:

> A Participant's "Pre–1995 Accrued Benefit" shall be subject to an annual [COLA] as of each January 1, beginning with the January 1 next following the date benefit payments commence. A Participant's "Post–1994 Accrued Benefit" shall not be subject to any [COLA] under this Section 5.7. For purposes of this Section 5.7, a Participant's "Pre–1995 Accrued Benefit" is any portion of the benefit payable to the Participant under the Plan (other than a lump sum benefit) that is attributable to such Participant's Accrued Benefit determined as of December 31, 1994 on the basis of the Participant's Final Average Compensation and Credited Service determined as of December 31, 1994 and the provisions of the Plan in effect on said date[,] and a Participant's "Post–1994 Accrued Benefit" is the remainder of the benefit payable to the Participant under the terms of the Plan (other than a lump sum benefit).

*Id.* § 5.7.

Under the Plan, the default form of payment is a "Single Life Annuity" for unmarried participants and an "Automatic Joint and Survivor Annuity" for married participants. *Id.* § 6.1. The Plan allows for other forms of annuities but provides that all annuities shall be "the Actuarial Equivalent of the benefit which would otherwise be payable as a Single Life Annuity." *Id.* § 6.2.

The Plan provides the option of a lump sum distribution in certain circumstances. Section 4.4 of the Plan states: "A Participant with five (5) or more years of Contin-

uous Service whose employment is terminated on or after January 1, 1989 for reasons other than retirement or death shall be eligible for a Deferred Vested Benefit ...." *Id.* § 4.4. Section 5.4 of the Plan defines "Deferred Vested Benefit" as the amount of the participant's Accrued Benefit as of the participant's date of termination. *Id.* § 5.4. Section 6.4 of the Plan states: "A Participant who terminates his or her employment under Section 4.4 and to whom Section 6.3 ["Mandatory Payment of Small Amounts"] does not apply may elect to receive the Actuarial Equivalent of his Deferred Vested Benefit in a lump sum." *Id.* § 6.4.

## B. Laurenzano's Complaint

Laurenzano was employed by Blue Cross and Blue Shield of Massachusetts from May 1992 through December 1997. Weafer Aff. ¶ 5. Laurenzano participated in and accrued benefits under the Plan. Compl. ¶ 6; Answer ¶ 6. Upon separation of his employment, rather than receive a life annuity, Laurenzano elected to receive a lump sum distribution. Compl. ¶ 6, Answer ¶ 6. This lump sum distribution did not include the present value of projected COLA payments. Compl. ¶ 9, Answer ¶ 9.

On July 14, 1998, Laurenzano sent a letter to Blue Cross requesting additional benefits. Def.'s Ex. F. Pursuant to the language of Section 5.7, Blue Cross denied his claim for additional benefits on October 9, 1998, *id.* Ex. G, and denied his appeal on February 19, 1999, *id.* Ex. H. Laurenzano filed his class action complaint with this Court on August 19, 1999.

## C. History of the Plan

The Plan initially provided both COLA payments and the option of a lump sum distribution. *Id.* Ex. I. The 1976 version of the Plan, effective January 1, 1976, and every version after 1976 until the time of

Laurenzano's termination, excluded COLA payments from the calculation of the lump sum distribution. *Id.* Exs. K (July 1, 1978); L (Jan. 1, 1981); M (Jan. 1, 1984); N (Jan. 1, 1985); P (Jan. 1, 1989); D (Dec. 3, 1997). On January 19, 1998, the Plan was amended to include COLA payments in the calculation of the lump sum distribution. *Id.* Ex. R.

Since at least 1976, the Plan has been funded solely by contributions made by Blue Cross; employees have not been required or permitted to make contributions to the Plan. Weafer Aff. ¶ 3. The Plan has been a "qualified" pension plan since at least 1983, Def.'s Exs. A–C, and thus has been subject to both the Employee Retirement Income Security Act ("ERISA") and the Internal Revenue Code ("IRC").

## III. Discussion

### A. COLA Payments

ERISA enumerates nine types of civil actions that may be brought to enforce its provisions. Laurenzano relies on two of these nine types:

**(a) Persons empowered to bring a civil action .**

A civil action may be brought—

(1) by a participant or beneficiary—

.    .    .    .    . .    .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

.    .    .    .    .

(3) by a participant, beneficiary, or fiduciary

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

ERISA § 502(a).[1]

### 1. Standing

■ Blue Cross challenges Laurenzano's standing to sue. Def.'s Mem. I at 2–3.[2] This question implicates this Court's jurisdiction, and can therefore be raised at any time. *Crawford v. Lamantia,* 34 F.3d 28, 32 (1st Cir.1994). Blue Cross argues that Laurenzano has received his lump sum distribution, so he no longer participates in or is a beneficiary of the Plan, and that because only participants and beneficiaries have standing, Laurenzano does not have standing to question the amount of his lump sum distribution. Def.'s Mem. I at 2–3. The argument is too clever by half.

If Laurenzano has a "colorable claim to vested benefits," then he has standing to sue for those vested benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (construing ERISA § 502[a][1][B] ); *Clair v. Harris Trust & Sav. Bank,* 190 F.3d 495, 497 (7th Cir.1999) (construing ERISA § 502[a][3] ). This Court has no trouble concluding that Laurenzano has standing to correct an alleged underpayment of his benefits. *Compare Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345, 350 (5th Cir.1989) (distinguishing claim for "damages" from claim for recalculation of lump sum distribution of "vested benefits"), *and Vartani-*

1.   29 U.S.C. § 1132(a).

2.   "Def.'s Mem. I" refers to Blue Cross' Memorandum in Support of Its Motion for Judg-

ment on the Basis of a Written Record [Docket no. 33].

*an v. Monsanto Co.*, 14 F.3d 697, 701–02 (1st Cir.1994) (noting ultimate question of standing is whether plaintiff is within the zone of interests ERISA was intended to protect), *with Crawford*, 34 F.3d at 33 ("Unlike the claimants in *Sommers*, plaintiff has failed to show that defendants' alleged breach of fiduciary duty had a direct and inevitable effect on *his* benefits.").

## 2. Causes of Action

Under Count I, Laurenzano seeks "to recover benefits due to him under the terms of his plan," ERISA § 502(a)(1)(B), and under Count II, Laurenzano seeks "appropriate equitable relief," *id.* § 502(a)(3), including restitution. Blue Cross draws a great distinction between ERISA § 502(a)(1)(B) and (a)(3), but as will become apparent, in this case, it is a distinction without much power.

### a. ERISA § 502(a)(1)(B)

Laurenzano probably cannot state a claim under ERISA § 502(a)(1)(B) because he does not seek a benefit due to him *under the terms of his plan.* In this case, the parties do not seriously dispute that Section 5.7 of the Plan specifically excludes COLA payments from any lump sum distributions. To the extent the parties dispute the meaning of Section 5.7, this Court holds that Blue Cross did not abuse its discretion, under Section 9.5 of the Plan, Pl.'s Ex. 1, § 9.5, when it denied, pursuant to the terms of the Plan, Laurenzano's request for additional benefits. *Firestone,* 489 U.S. at 115, 109 S.Ct. 948; *Pari–Fasano v. ITT Hartford Life & Accident Ins. Co.,* 230 F.3d 415, 418–19 (1st Cir. 2000). Rather than pervert the plain meaning of ERISA § 502(a)(1)(B), this Court will assume that Laurenzano must find a cause of action elsewhere. *But see Kiefer v. Ceridian Corp.,* 976 F.Supp. 829,

844 (D.Minn.1997) (proceeding under ERISA § 502[a][1][B] ).

### b. ERISA § 502(a)(3)

Laurenzano states a claim under ERISA § 502(a)(3) because he alleges that the Plan does not comply with ERISA. The more interesting question concerns the remedy, if any, available to Laurenzano. ERISA § 502(a)(3) only allows Laurenzano to obtain *appropriate equitable relief,* to *redress* violations, or *enforce* provisions, of ERISA.

What does "appropriate" mean? In 1996, the Supreme Court held that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." *Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In other words, ERISA § 502(a)(3) is a "catch-all" cause of action, or a "safety net," for plaintiffs who cannot rely on ERISA's other enumerated causes of action. *Id.* at 512, 515, 116 S.Ct. 1065 (1996). Blue Cross makes an argument similar to its standing argument as to why Laurenzano cannot bring a cause of action under ERISA § 502(a)(3): Laurenzano states a cause of action under ERISA § 502(a)(1)(B), so he cannot state a cause of action under the catch-all provision of ERISA § 502(a)(3), and because Laurenzano loses under the terms of the Plan, Laurenzano does not state a cause of action under ERISA § 502(a)(1)(B), so in the end, Laurenzano does not state any cause of action at all. Def.'s Mem. I at 4–5.

Again, Blue Cross's argument is too clever by half, and it also flies in the face of *Varity,* which specifically allowed relief under ERISA § 502(a)(3) because the plaintiffs could not proceed under ERISA § 502(a)(1)(B). In short, *Varity* does not force a plaintiff to elect his remedy before filing a complaint, but rather prohibits a

plaintiff from receiving equitable relief under ERISA § 502(a)(3) in addition to some other form of relief. *Varity*, 516 U.S. at 515, 116 S.Ct. 1065 (stating that "where Congress elsewhere provided adequate relief for beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would normally not be 'appropriate.'"). Laurenzano is prohibited from obtaining relief under any other section of ERISA. Consequently, a remedy pursuant to § 503(a)(3) is appropriate.

■ What is "equitable relief"? In 1993, a divided Supreme Court held that the phrase "equitable relief," at least for suits alleging a breach of fiduciary duty, did not mean all the relief available in the courts of equity for a breach of trust (which included "legal relief," such as money damages), but rather was limited to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (5–4 decision), *cited with approval in Armstrong v. Jefferson Smurfit Corp.*, 30 F.3d 11, 13 (1st Cir.1994); *accord Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 824 (1st Cir.1988) (" 'Other appropriate equitable relief' should be interpreted to mean what it says—declaratory or injunctive relief, not compensatory and punitive damages."). In *Mertens,* the majority refused to give "equitable relief" the broad reading urged by the petitioners and adopted by the dissent. *Mertens,* 508 U.S. at 258, 113 S.Ct. 2063. It noted that "[e]quitable relief must mean *something* less than *all* relief." *Id.* at 258 n. 8, 113 S.Ct. 2063. Thus, a court's ability to fashion appropriate relief under ERISA is cabined somewhat.

ERISA § 502(a)(3) affords Laurenzano equitable relief, such as injunction, mandamus, and restitution, as opposed to compensatory or punitive damages. The distinction between legal and equitable remedies is not simply the distinction between money and prospective relief, however. If this were true, causes of action brought under section 502(a)(3) would never result in monetary awards. Equitable relief can take the form of money. *See generally* Dan B. Dobbs, *Law of Remedies* (2d ed.1993). Indeed, some courts have awarded money under ERISA § 502(a)(3) by characterizing such relief as *restitution,* a monetary form of relief that straddles the divide between law and equity. *See, e.g., Ream v. Frey,* 107 F.3d 147, 152–53 & n. 5 (3d Cir.1997); *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.,* 57 F.3d 1255, 1269 (3d Cir. 1995); *Schwartz v. Gregori,* 45 F.3d 1017, 1022–23 (6th Cir.1995); *Howe v. Varity Corp.,* 36 F.3d 746, 756 (8th Cir.1994), *aff'd,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), *examined in Kerr v. Charles F. Vatterott & Co.,* 184 F.3d 938 (8th Cir.1999); *Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund,* 933 F.Supp. 1124, 1139 (D.Mass.1996) (Saris, J.) ("In the ERISA context, the equitable remedy of restitution includes compelling trustees to pay benefits due.").

Laurenzano requests equitable relief in the form of restitution. Restitution has traditionally been awarded to prevent unjust enrichment. *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 142 (2d Cir. 1999); *Schwartz,* 45 F.3d at 1022 (citing Restatement of Restitution § 1 cmt. e [1936]). In the ERISA context, courts have awarded monetary damages under the restitution label in cases involving a breach of fiduciary duty. *Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974,* 165 F.3d 209, 213 (3d Cir.1998); *Ream,* 107 F.3d at 152; *Mansk-*

er v. TMG Life Ins. Co., 54 F.3d 1322, 1330–31 (8th Cir.1995); Jackson, 933 F.Supp. at 1139. As a result of the fiduciary's misrepresentation or other improper action, the beneficiary failed to receive her benefits as required by the plan or mandated by ERISA. Courts reason that to allow a fiduciary to escape liability after disregarding the interests of plan beneficiaries would undermine congressional intent. Ream, 107 F.3d at 153 (citing 120 Cong. Rec. 15737 [1974] [Comments of Sen. Williams], reprinted in 1974 U.S.C.C.A.N. 5177, 5186). This analysis makes good sense and arrives at a just outcome.

Restitution is not the only equitable remedy that takes the form of monetary damages, however. In Mertens, the Supreme Court cautioned courts to avoid relying on traditional definitions when interpreting present-day statutes. Mertens, 508 U.S. at 256, 113 S.Ct. 2063. Specifically, the Supreme Court stated "[a]s memories of the divided bench, and familiarity with its technical refinements, recede further into the past, the former meaning becomes, perhaps, increasingly unlikely; but it remains a question of interpretation in each case which meaning is intended." Id. at 256–57, 113 S.Ct. 2063. Thus, although traditional notions of equity are an important foundation, this Court must also look to Congress' intent when it authored ERISA.

Post-Mertens, the Second Circuit, in Strom v. Goldman, Sachs & Co., 202 F.3d 138 (2d Cir.1999), explored Congress' intent when it penned the phrase "other equitable relief." The court noted that ERISA was enacted to create an improved remedial scheme for the benefit of plan participants and beneficiaries. Id. at 145. In addition, the Second Circuit examined how Congress has used the phrase "equitable relief" in similar contexts. Id. at 143–

50. After an extensive discussion, the court concluded that as "equitable relief" under Title VII of the Civil Rights Act of 1964 and the National Labor Relations Act, includes "back pay," so "equitable relief" under ERISA must include "benefits owed." Id. at 146–47. The equitable remedy of back-pay is intended to compensate the victim for an employer's direct violation of the statute. Likewise, equitable relief under ERISA is meant to compensate the beneficiaries for a fiduciary's violation of the statute.

Although this Court agrees with the outcomes in the Second, Third, Sixth, and Eighth Circuits, as well as the holding in this District, it does not hesitate to award money as a form of equitable relief pursuant to ERISA. Here, Blue Cross has been unjustly enriched by its retention of the COLA payments in violation of ERISA. In cases alleging money owed under ERISA, only money can "redress" the harm alleged; to hold that ERISA mandates certain benefits, but then deny receipt of those benefits, strips the right of its remedy, in direct contravention of the words of the statute and the intent of Congress, which require courts to "redress" violations and "enforce" provisions of ERISA.

Given Congress's intent, this Court concludes that Laurenzano states a cause of action to recover the projected COLA payments withheld from his lump sum distribution.

### 3. Merits of the Cause of Action

Before turning to the merits, a few preliminary observations are in order: First, the only dispute between the parties is whether the COLA payments should be included in the present value calculation; Laurenzano does not challenge the precision or accuracy of the function used by Blue Cross to transform a given stream of payments into a single, equivalent pay-

ment. Thus, Blue Cross needlessly spills much ink throughout its several memoranda[3] arguing about the parameters of the present value function as opposed to the inputs to that function. Second, along the same lines, because this case does not turn on the mathematical calculation of "present value" or "actuarial equivalent," but rather on the legal question of the appropriate inputs to the present value function, actuaries cannot assist this Court. If there were any need to perform complex, present value calculations, then the Court would welcome expert opinions—after all, the Court's mathematical and computer skills can only be described as execrable—but because this case involves only legal questions, the expert reports submitted by the parties are irrelevant and will not be considered. Fed.R.Evid. 402.

### a. Accrued Benefit

■ The critical question in this case is whether the COLA payments are an "accrued benefit" as defined by law.

ERISA § 3(22)[4] defines "normal retirement benefit" to mean "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age," *id.* Treasury

Regulation § 1.411(a)–7(c)[5] refines the definition of "normal retirement benefit":

(1) *In general.* For purposes of section 411 and the regulations thereunder, the term "normal retirement benefit" means the periodic benefit under the plan commencing upon early retirement (if any) or at normal retirement age, whichever benefit is greater.

.    .    .    .    .

(3) *Benefits included.* For purposes of this paragraph, the normal retirement benefit under a plan shall be determined without regard to ancillary benefits not directly related to retirement benefits such as medical benefits or disability benefits not in excess of the qualified disability benefit; see section 411(a)(7) and paragraph (a)(1) of this section. For this purpose, a qualified disability benefit is a disability benefit which is not in excess of the amount of the benefit which would be payable to the participant if he separated from service at normal retirement age.

*Id.* § 1.411(a)–7(c)(1), (2).

ERISA § 3(23)[6] defines "accrued benefit" to mean, in the case of a defined

---

3. After failing to convince Laurenzano or the Court to assent to a brief exceeding the twenty-page limit, Blue Cross simply submitted two twenty-page briefs. "[S]ince brevity is the soul of wit, [a]nd tediousness the limbs and outward flourishes," William Shakespeare, *Hamlet* act 2, sc. 2, Blue Cross was mistaken to believe that it could accomplish more with forty pages than it could with twenty. To the contrary, the discipline of page limitations might have persuaded Blue Cross to scrap its weaker arguments and focus on those arguments with more promise. In the law, as in poetry, quality most often varies inversely with quantity.

4. 29 U.S.C. § 1002(22); *accord* IRC § 411(a)(9), 26 U.S.C. § 411(a)(9).

5. 26 C.F.R. § 1.411(a)–7(c). Pursuant to ERISA § 3002(c), 29 U.S.C. § 1202(c), and

Labor Regulation § 2530.200a–2, 29 C.F.R. § 2530.200a–2, regulations prescribed by the Secretary of the Treasury under IRC §§ 410(a), 411, and 412, 26 U.S.C. §§ 410(a), 411, 412, (relating to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively) also apply to the minimum participation, vesting, and funding standards set forth in ERISA §§ 201 through 308, 29 U.S.C. §§ 1051–1086. *See, e.g., Lyons v. Ga.-Pac. Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1244–45 (11th Cir.2000), *petition for cert. filed,* 2001 WL 118610 (2001); *McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1114–15 (9th Cir.2000).

6. 29 U.S.C. § 1002(23); *accord* IRC § 411(a)(7), 26 U.S.C. § 411(a)(7).

benefit plan, "the individual's accrued benefit determined under the plan and, except as provided in [ERISA § 204(c)(3) ], expressed in the form of an annual benefit commencing at normal retirement age," *id.* Treasury Regulation § 1.411(a)–7(a)(1)(ii) [7] refines the definition of "accrued benefit":

> In general, the term "accrued benefits" refers only to pension or retirement benefits. Consequently, accrued benefits do not include ancillary benefits not directly related to retirement benefits such as payment of medical expenses (or insurance premiums for such expenses), disability benefits not in excess of the qualified disability benefit (see section 411(a)(9) and paragraph (c)(3) of this section), life insurance benefits payable as a lump sum, incidental death benefits, current life insurance protection, or medical benefits described in section 401(h). For purposes of this paragraph a subsidized early retirement benefit which is provided by a plan is not taken into account, except to the extent of determining the normal retirement benefit under the plan (see section 411(a)(9) and paragraph (c) of this section). The accrued benefit includes any optional settlement at normal retirement age under actuarial assumptions no less favorable than those which would be applied if the employee were terminating his employment at normal retirement age. The accrued benefit does not include any subsidized value in a joint and survivor annuity to the extent that the annual benefit of the joint and survivor annuity does not exceed the annual benefit of a single life annuity.

*Id.* In addition, ERISA § 204(g) [8] provides an expanded definition of "accrued benefit" for purposes of the anti-cutback rule, which prohibits a plan from decreasing benefits by amendments to the plan, and Treasury Regulation § 1.411(a)–11(a)(2) [9]

---

7. 26 C.F.R. § 1.411(a)–7(a)(1).

8. 29 U.S.C. § 1054(g). This section provides, in part:

> **(g) Decrease of accrued benefits through amendment of plan**
>
> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
>
> (2) For purposes of paragraph (1), a plan amendment which has the effect of—
>
> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
>
> (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. The Secretary of the Treasury may by regulations provide that this subparagraph shall not apply to a plan amendment described in

subparagraph (B) (other than a plan amendment having an effect described in subparagraph (A)).

*Id.; accord* IRC § 411(d)(6), 26 U.S.C. § 411(d)(6).

9. 26 C.F.R. § 411(a)–11(a)(2). This regulation states:

> For purposes of this section, an accrued benefit is valued taking into consideration the particular optional form in which the benefit is to be distributed. The value of an accrued benefit is the present value of the benefit in the distribution form determined under the plan. For example, a plan that provides a subsidized early retirement annuity benefit may specify that the optional single sum distribution form of benefit available at early retirement age is the present value of the subsidized early retirement annuity benefit. In this case, the subsidized early retirement annuity benefit must be used to apply the valuation requirements of this section and the resulting amount of the single sum distribution. However, if a plan that provides a subsidized early retirement annuity benefit specifies that the single sum distribution benefit available at early retire-

provides a specific definition of "accrued benefit" for purposes of calculating the threshold amount above which a plan cannot immediately distribute benefits without the consent of the participant.

### (1) Annual Benefit Commencing at Normal Retirement Age

Blue Cross first argues that (i) the Plan specifically excludes the COLA payments from the Plan's definition of Accrued Benefit and (ii) the law does not require COLA payments to be part of a pension plan, whether paid as an annuity or a lump sum, so (iii) the Plan need not include the COLA payments with lump sum distributions. To quote from Blue Cross's memorandum: "Nothing in ERISA, the IRC or legislative history mentions the consideration of COLAs in lump sum calculations, despite the fact that ERISA and its regulations recognize that pension plans may include COLAs." Def.'s Mem. I at 6.

The problem with Blue Cross's argument is that it would permit the terminology found in a retirement plan to defeat the intent of Congress. Blue Cross has leeway to define the benefits that it will provide participants, *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 511–13, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), but it does not have leeway to change the legal meaning of "accrued benefit." Neither the definitions found in the Plan nor Laurenzano's decision to take a lump sum distribution can alter the legal conclusion that the "accrued benefit" under the Plan is an annuity that includes COLA payments.

Several cases support the conclusion that COLA payments are an "accrued benefit." In *Hickey v. Chicago Truck Drivers, Helpers & Warehouse Workers Union,*

980 F.2d 465 (7th Cir.1992), the court held that COLA payments were an "accrued benefit" and thus could not be eliminated by amendment, *id.* at 468–70. The court examined the distinction between "accrued benefits" and "ancillary benefits," which is found in the legislative history and the regulations, and concluded that COLA payments are "accrued benefits." Ancillary benefits are benefits that subsequent employers generally will provide, such as medical and life insurance, while accrued benefits have the primary purpose of providing retirement income and generally are not provided by subsequent employers. *Id.* at 468. Although the court interpreted "accrued benefits" for the purpose of the anti-cutback rule, which allows for an expanded definition of "accrued benefits," the court specifically rested its holding on the *general* definition of "accrued benefits." *Id.* at 470 ("The plaintiffs argue that, even if the COLA is not an 'accrued benefit,' it is a retirement-type subsidy and, therefore, cannot be eliminated under [ERISA § 204(g)(2)]. Since we hold that the COLA is a part of the 'accrued benefit' and was improperly eliminated in violation of [ERISA § 204(g)(1)], we do not reach the question of whether the COLA would qualify as a retirement-type subsidy.").

In *Hickey,* the court relied on *Shaw v. International Ass'n of Machinists & Aerospace Workers Pension Plan,* 750 F.2d 1458 (9th Cir.1985). The facts and reasoning of *Hickey* and *Shaw* are indistinguishable except for the fact that *Shaw* considered a "living pension" that grew in relation not to the Consumer Price Index, but to the salary for the position the retiree held immediately prior to retirement. *Shaw,* 750 F.2d at 1460. The court in

---

ment age is the present value of the normal retirement annuity benefit, then the normal retirement annuity benefit is used to apply the valuation requirements of this section

and the resulting amount of the single sum distribution available at early retirement age.
*Id.*

*Shaw* concluded that the living pension was an accrued benefit, as opposed to an ancillary benefit, and thus could not be eliminated by amendment.

In a case highly analogous to this one, the District of Maryland reached the same result as the courts in *Shaw* and *Hickey* but for a different reason. In *Kohl v. Ass'n of Trial Lawyers of America*, 183 F.R.D. .475 (D.Md.1998), the court held that participants receiving lump sum distributions were entitled to the present value of the COLA payments they would have received otherwise, *id.* at 480. The court rejected the reasoning of *Hickey*, however, and instead defined "accrued benefit" by looking solely at the terminology found in the plan itself:

> Defendants contend that *Hickey* is inapposite because it only stands for the proposition that once a COLA benefit is promised, the pension plan cannot be terminated without some provision for future cost of living increases. The Court believes Defendants are correct. *Hickey* does not answer the initial question before us, but rather begs the question of whether the ... pension plan promised a COLA to those participants who elect to receive their retirement benefits in the form of a lump sum payment. Thus, the threshold question here is whether the Plan provides the COLA to lump sum payments. However, if the Plan does, the Court will rely on the rationale and reasoning in *Hickey* in considering the liability of the Defendants.

*Id.* at 479 (footnote omitted). The court went on to examine the contractual terms of the pension plan and concluded that they required lump sum distributions to include the COLA payments. *Id.* at 483.

Blue Cross tries to distinguish *Hickey, Shaw,* and *Kohl* by pointing out that in all three cases the plan itself promised COLA payments, whereas the plan in this case does not. Def.'s Mem. I at 12–13. This Court disagrees with the legal conclusion that the plan in this case does not promise COLA payments. To the contrary, the normal retirement benefit under the Plan is an annuity with COLA payments. At this point, ERISA's definition of "accrued benefit" bears repeating: "Accrued benefit" means "the individual's accrued benefit determined under the plan and, except as provided in [ERISA § 204(c)(3)], *expressed in the form of an annual benefit commencing at normal retirement age.*" ERISA § 3(23) (emphasis added); *see also Esden v. Bank of Boston*, 229 F.3d 154, 162–63 (2d Cir.2000), *cert. dismissed,* —— U.S. ——, 121 S.Ct. 674, 148 L.Ed.2d 652 (2001) (discussing lump sum distribution of accrued benefit). Thus, ERISA allows only *one* definition of "accrued benefit," and that one definition depends on the "annual benefit commencing at normal retirement age." [10] To the extent *Kohl* implies that a plan may define "accrued benefit" to mean one thing for annuities and another thing for lump sum distributions, this Court disagrees with *Kohl;* there is only one legal definition of "accrued benefit."

In this case, the Plan provides only one definition of accrued benefit, but it is not consonant with the *legal* definition of "accrued benefit." Under the Plan, the "annual benefit commencing at normal retirement age" is an annuity with COLA payments. Given the reality of the plan, as opposed to its legally-meaningless ter-

10. As discussed below, ERISA § 204[c][3] provides that if an employee's accrued benefit is not expressed in the form of an annual benefit, then it must be the actuarial equivalent of the annual benefit.

minology, the "accrued benefit" under the Plan includes COLA payments.

### (2) Subsidy

Blue Cross also argues that the COLA payments are a subsidy and thus should not be included in the definition of "accrued benefit." Def.'s Mem. I at 16–17. Although the Court finds this argument interesting, the argument nonetheless lacks merit.

Blue Cross argues that it is legal to provide a lump sum distribution that is worth less than the subsidized annuity that a participant might otherwise receive. Blue Cross provides the following example, which apparently is quite common among plans: A plan provides an annuity to early retirees that is subsidized and the plan bases the lump sum distribution off the normal retirement benefit rather than the subsidized early retirement benefit. Thus, a retiree before the normal retirement age is faced with two options: take a lump sum distribution (equal to the normal retirement benefit) or take a subsidized annuity, which has a greater present value. Blue Cross argues by analogy that it should be allowed to make a retiree choose between a subsidized normal retirement benefit and a lump sum based on the unsubsidized normal retirement benefit. Blue Cross's argument might be logical, but it is not the law. Under the law, there is no such thing as a *subsidized* normal retirement benefit, just as there is no such thing as a *subsidized* accrued benefit.

Blue Cross is correct that Treasury Regulation § 1.411(a)–7(a)(1) does not include "subsidized early retirement benefits" in its definition of "accrued benefits," so a lump sum distribution might be worth less than the annuity that an early retiree might receive. *Cf.* ERISA § 204(g)(2)(A) (including "retirement-type subsidy" in definition of "accrued benefit" only for purpose of anti-cutback rule), *construed in Bellas v. CBS, Inc.,* 221 F.3d 517, 524–26 (3d Cir.2000) (quoting S.Rep. No. 98–575, at 27–30 [1984], *reprinted in* 1984 U.S.C.C.A.N. 2547, 2573–76 [defining "retirement-type subsidy" as a subsidy that begins before, and continues after, retirement] ), *cert. denied,* —— U.S. ——, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001). The problem for Blue Cross is that the COLA payments are not part of a subsidized early retirement benefit but rather are integral to the "annual benefit commencing at normal retirement age"—the "accrued benefit." More generally, this Court does not consider it legitimate for a plan to characterize any part of the "annual benefit commencing at normal retirement age" as a "subsidy," because that would return employment law to the day when pensions were a mere gift promise, revocable at the employer's whim. *See Hickey,* 980 F.2d at 468 ("The term 'accrued benefit' has a statutory meaning, and the parties cannot change that meaning by simply labeling certain benefits as 'accrued benefits' and others, such as the COLA, as 'supplementary benefits.' "); *cf.* S.Rep. No. 98–575, at 30, *reprinted in* 1984 U.S.C.C.A.N. at 2576 (stating the committee's expectation that Treasury regulations refining the anti-cutback rule will prevent the recharacterization of retirement-type benefits as retirement-type subsidies that are not protected by the anti-cutback rule).

### b. Lump Sum Distribution

■ Given that the COLA payments are an accrued benefit, as defined by law, the next question is how those payments should be transformed into a lump sum. Several provisions in the law specify how to calculate a lump sum distribution.

ERISA § 203(a)[11] establishes that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age, *id.*, and ERISA § 203(e)[12] specifies that if the present value of the nonforfeitable benefit exceeds $5,000, then the plan may not immediately distribute the benefit without the consent of the participant, *id.*

ERISA § 205(a)[13] requires pension plans to pay accrued benefits in the form of a qualified joint and survivor annuity, which is defined in ERISA § 205(d) as an annuity (i) for the life of the participant with a survivor annuity for the life of the spouse and (ii) which is the actuarial equivalent of a single annuity for the life of the participant, *id.* § 205(a), (d). In the alternative, ERISA § 205(g)[14] allows the plan to provide a lump sum that is the present value of the qualified joint and survivor annuity. Treasury Regulation § 1.417(e)–1(d),[15] which is incorporated by reference in Treasury Regulation § 1.411(a)–11(d),[16]

---

11. 29 U.S.C. § 1053(a); *accord* IRC § 411(a), 26 U.S.C. § 411(a).

12. 29 U.S.C. § 1053(e). This section provides, in part:

(e) **Consent for distribution; present value; covered distributions**

(1) If the present value of any nonforfeitable benefit with respect to a participant in a plan exceeds $5,000, the plan shall provide that such benefit may not be immediately distributed without the consent of the participant.

(2) For purposes of paragraph (1), the present value shall be calculated in accordance with [ERISA § 205(g)(3)].

*Id.; accord* IRC § 411(a)(11), 26 U.S.C. § 411(a)(11).

13. 29 U.S.C. § 1055(a); *accord* IRC § 401(a)(11), 26 U.S.C. § 401(a)(11).

14. 29 U.S.C. § 1055(g). This section provides, in part:

(g) **Distribution of present value of annuity; written consent; determination of present value**

(1) A plan may provide that the present value of a qualified joint and survivor annuity or a qualified preretirement survivor annuity will be immediately distributed if such value does not exceed the dollar limit under [ERISA § 203(e)(1)]. No distribution may be made under the preceding sentence after the annuity starting date unless the participant and the spouse of the participant (or where the participant has died, the surviving spouse) consent in writing to such distribution.

(2) If—

(A) the present value of the qualified joint and survivor annuity or the qualified preretirement survivor annuity exceeds the dollar limit under [ERISA § 203(e)(1)], and

(B) the participant and the spouse of the participant (or where the participant has died, the surviving spouse) consent in writing to the distribution,

the plan may immediately distribute the present value of such annuity.

(3) Determination of present value

(A) In general

(i) Present value

Except as provided in subparagraph (B), for purposes of paragraphs (1) and (2), the present value shall not be less than the present value calculated by using the applicable mortality table and the applicable interest rate.

*Id.; accord* IRC § 417(e), 26 U.S.C. § 417(e).

15. 26 C.F.R. § 417(e)–1(d). This regulation provides, in part:

(d) *Present value requirement—*(1) *General rule.* A defined benefit plan must provide that the present value of any accrued benefit and the amount (subject to sections 411(c)(3) and 415) of any distribution, including a single sum, must not be less than the amount calculated using the applicable interest rate described in paragraph (d)(3) of this section (determined for the month described in paragraph (d)(4) of this section) and the applicable mortality table described in paragraph (d)(2) of this section. The present value of any optional form of benefit cannot be less than the present value of the normal retirement benefit determined in accordance with the preceding sentence.

*Id.*

16. 29 C.F.R. § 411(a)–11(d).

which refines ERISA § 203(e), specifies the mechanics of the present value calculation and notes that "[t]he present value of any optional form of benefit cannot be less than the present value of the normal retirement benefit," *id.* § 1.417(e)–1(d).

ERISA § 204(c)(3)[17] provides that in the case of a defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, then the employee's accrued benefit shall be the actuarial equivalent of the annual benefit, *id.* Treasury Regulation § 1.411(c)–1(e)[18] reiterates this requirement.

IRC § 415(b)[19] limits the amount of annual benefits that a qualified plan can provide to a participant, *id.* The limits, however, are subject to COLAs. *Id.* § 415(d); *see also id.* § 415(k)(2)(B) (defining "qualified cost-of-living arrangement" by which certain contributions for COLAs do not count toward limitations). The Internal Revenue Service has issued a handbook for its employees which establishes guidelines for examining pension plans.[20] The handbook, which is freely available on the Internet, provides simple explanations of the requirements of the IRC, but it .does not have the force of law. Of relevance to this case, the handbook addresses (i) how to calculate, in general, a lump sum distribution under a defined benefit plan[21] and

17. 29 U.S.C. § 1054(c). This section provides:

   **(c) Employee's accrued benefits derived from employer and employee contributions**
   **(1)** For purposes of this section and [ERISA § 203] an employee's accrued benefit derived from employer contributions as of any applicable date is the excess (if any) of the accrued benefit for such employee as of such applicable date over the accrued benefit derived from contributions made by such employee as of such date.
   **(2)**

   **(B)** Defined benefit plans
   In the case of a defined benefit plan, the accrued benefit derived from contributions made by an employee as of any applicable date is the amount equal to the employee's accumulated contributions expressed as an annual benefit commencing at normal retirement age, using an interest rate which would be used under the plan under [ERISA § 205(g)(3) ] (as of the determination date).

   **(3)** For purposes of this section, in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, or if the accrued benefit derived from contributions made by an employee is to be determined with respect to a benefit other than an annual benefit in the form of a single life

   annuity (without ancillary benefits) commencing at normal retirement age, the employee's accrued benefit, or the accrued benefits derived from contributions made by an employee, as the case may be, shall be the actuarial equivalent of such benefit or amount determined under paragraph (1) or (2).
   *Id.; accord* IRC § 411(c), 26 U.S.C. § 411(c).

18. 26 C.F.R. § 411(c)–1(e).

19. 26 U.S.C. § 415(b).

20. Internal Revenue Service, *Internal Revenue Manual* 7.7.1 (1998), *available at* htt p://www.irs.gov/prod/bus_info/tax_pro/irm-part/part07.html.

21. Chapter 10 of Handbook 7.7.1 provides, in part:

   1. The factors necessary to determine the single-sum distribution amounts from defined benefits plans include:
   A. Interest rate assumptions and mortality factors used by the plan;
   B. Annuity form of benefit available to the participant under the plan;
   C. Normal retirement age under the plan, and
   D. 417 interest rate limitation provided under the plan.
   *Id.* § 10.5; *accord* I.R.S. Announcement 95–33, 1995–19 I.R.B. 14 (May 8, 1995), *available at* 1995 WL 223244.

(ii) how to calculate, in particular, for purposes of complying with the limitations on distributions, a lump sum distribution of an annuity that increases each year by a COLA.[22] The handbook does not mention COLAs in its general discussion of how to calculate lump sums, but with respect to the particular question of how to transform an annuity with a COLA into a lump sum, for purposes of complying with the limitations on distributions, the handbook states that the lump sum must include the present value of the projected COLA payments.

The parties needlessly squabble over the precise scope and applicability of the provisions listed above. This Court agrees with the general proposition that ERISA requires lump sum distributions to equal the present value of the participants' accrued benefits, *Esden*, 229 F.3d at 162–63, but this Court need not go into additional legal or mathematical detail. The Plan

itself provides a present value function that the parties do not contest and that presumably complies with applicable law. Thus, to calculate properly the lump sum distribution, this Court holds that the Plan must project (based on reasonable actuarial assumptions) the stream of COLA payments that a participant would otherwise receive as part of his annual benefit commencing at normal retirement age, and then the Plan must determine the present value of that stream of COLA payments, along with the present value of the fixed annuity payments, using the present value function provided in the Plan.

## B. Statute of Limitations

Because Blue Cross violated ERISA by not including projected COLA payments in its lump sum distributions, this Court must determine which class members have a remedy that is not barred by the relevant statute of limitations.

---

**22.** Chapter 6 of Handbook 7.7.1 provides, in part:

1. IRC 415(d) provides that the IRC 415(b)(1)(A) dollar limitation is adjusted annually by the Secretary of the Treasury to take into account increases in the cost of living, with the adjusted limitation effective as of January 1 of a calendar year and applicable to limitation years that end during that calendar year.

A. The adjusted dollar limitation is applicable to participants in a DB plan and to employees who have retired or otherwise terminated their service under the plan with a nonforfeitable right to accrued benefits, regardless of whether they have actually begun to receive such benefits.

B. However, the annual benefit payable to a terminated participant, which is otherwise limited by the dollar limitation, may be increased in accordance with COLAs to the dollar limitation only *if the plan specifically provides for such post-retirement adjustments*.

2. While a DB plan may include a provision which automatically adjusts the maximum dollar limitation for changes in the cost-of-living, the provision may only provide for scheduled increase which become effective as provided in IRC 415(d) no sooner than January of each calendar year. Stated differently, increases in the dollar limitation may not be anticipated. See Reg. 1.415–5(a).

5. For purposes of calculating a single-sum distribution of a participant's benefit, COLA increases in the dollar limitation and the compensation limitation must not be anticipated.

A. Where a plan formula provides that a participant's benefit is increased each year by a COLA which is a function of the Consumer Price Index (CPI), a participant receiving their benefit in the form of a single sum must receive projections of the CPI increases (based on reasonable actuarial assumptions) as part of their single sum, but only to the extent the single sum does not exceed the actuarial present value of the lesser of the *current* dollar limitation or *current* compensation limitation applicable to the participant.

*Id.* § 6.3.1; *accord* I.R.S. Announcement 95–99, 1995–47 I.R.B. 10 (Nov. 27, 1995), *available at* 1995 WL 691417.

## 1. Applicable Law

■ It is not clear what statute of limitations applies to a claim under ERISA § 502(a)(3) that does not allege a breach of fiduciary duty. ERISA provides a statute of limitations of up to six years for breach of fiduciary duty, ERISA § 413,[23] and federal law provides a default statute of limitations of four years for all federal statutes enacted after 1990, 28 U.S.C. § 1658, but neither of these statutes of limitations applies to Laurenzano's claim. His claim is not for breach of fiduciary duty, but rather to enforce ERISA, which was enacted in 1974. *Compare Salcedo v. John Hancock Mut. Life Ins. Co.*, 38 F.Supp.2d 37, 40 (D.Mass.1998) (Lasker, J.) (collecting cases refusing to apply ERISA § 413 to ERISA § 502[a][3]), *with Radford v. Gen. Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir. 1998) (applying ERISA § 413 to claim for breach of fiduciary duty under ERISA § 502[a][3]). Thus, because Laurenzano's claim falls outside the scope of the federal statutes, this Court characterizes the federal claim as a state claim and borrows the most analogous state statute of limitations. *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F.Supp.2d 79, 85 (D.Mass. 1998) (Neiman, M.J.) (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355–58, 111 S.Ct. 2773, 115 L.Ed.2d 321 [1991] [plurality]), *aff'd*, 182 F.3d 51 (1st Cir.1999); *see also Reed v. United Transp. Union*, 488 U.S. 319, 323–24, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989); *Wilson v. Garcia*, 471 U.S. 261, 266–67 & n. 12, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

The parties present two competing state statutes of limitations: a six-year limitation on contracts, Mass. Gen. Laws ch. 260, § 2,[24] and a three-year limitation on wages, *id.* ch. 149, § 150.[25] If this case were brought under ERISA § 502(a)(1)(B) to enforce the terms of the Plan, then this Court would see no reason to disagree with the opinions in this District applying the statute of limitation on contracts. *See*

**23.** 29 U.S.C. § 1113.

**24.** The statute provides:

Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied, except actions limited by section one or actions upon judgments or decrees of courts of record of the United States or of this or of any other state of the United States, shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues.

Mass. Gen. Laws ch. 260, § 2.

**25.** The statute provides, in part:

Any employee claiming to be aggrieved by a violation of section 148 [biweekly payment of wages], 148A [retaliation against employee seeking wages], 148B [expanded definition of employee for purposes of Chapter 149], 150C [failure to contribute withholdings to insurance], 152 [penalties for tardiness] or 152A [retention of employee's tips] or section 19 of chapter 151 [minimum wage] may, at the expiration of ninety days after the filing of a complaint with the attorney general, or sooner, if the attorney general assents in writing, and within three years of such violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of the litigation and reasonable attorney fees.

*Id.* ch. 149, § 150, para. 2 (effective July 1, 1993); *cf. id.* at ch. 149, § 149, *construed in Commonwealth v. N. Telecom, Inc.*, 25 Mass. App.Ct. 255, 257, 517 N.E.2d 491 (1988) (applying six-year statute of limitation to employee's criminal prosecution against employer for failure to pay wages pursuant to section 148); *Commonwealth v. Morash*, 402 Mass. 287, 522 N.E.2d 409 (1988) (discussing ERISA preemption of section 148), *rev'd*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989).

*Salcedo,* 38 F.Supp.2d at 40; *I.V. Servs.,* 7 F.Supp.2d at 85–86, *cited with approval in Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 648 (9th Cir.2000) (en banc). The courts of appeals are all in agreement that ERISA § 502(a)(1)(B) is most analogous in general to a contract claim, but the Third and Eighth Circuits apply the limitation on wages as a more specific application of the general limitation on contracts. *Compare, e.g., Harrison v. Digital Health Plan,* 183 F.3d 1235, 1239–40 (11th Cir.1999) (applying general statute of limitations governing contracts), *with Syed v. Hercules Inc.,* 214 F.3d 155, 161 (3d Cir.2000) (applying specific statute of limitations governing wages), *cert. denied,* —— U.S. ——, 121 S.Ct. 1088, 148 L.Ed.2d 963 (2001), *and Adamson v. Armco, Inc.,* 44 F.3d 650, 652–53 (8th Cir.1995) (same). Because this case arises under ERISA § 502(a)(3), as opposed to ERISA § 502(a)(1)(B), this Court enjoys considerably less guidance, and the guidance that does exist is not consistent. The Second Circuit applies the general limitation on contracts to actions under *both* ERISA § 502(a)(1)(B) and (a)(3), while the Third Circuit applies the specific limitation on wages to actions under *both* ERISA § 502(a)(1)(B) and (a)(3). *Compare Carollo v. Cement & Concrete Workers Dist. Council Pension Plan,* 964 F.Supp. 677, 688–89 (E.D.N.Y.1997) ("The state limitations period for contractual actions has been applied almost exclusively in actions to recover benefits under [ERISA § 502(a)(1)(B)] and rarely in actions for equitable relief under [ERISA § 502(a)(3)]. But the present action seeks reformation of the Plan and recalculation of [the plaintiff's] benefits, and is sufficiently analogous to an action to recover benefits to warrant application of the six-year limitations period [for contracts] under [N.Y. Civil Practice Law and Rules] § 213(2)."), *with Gluck v. Unisys Corp.,* 960 F.2d 1168, 1182 (3d Cir.1992) ("Claims for recalculation of benefits already paid are essentially claims for past due 'wages.'").

This Court holds that a cause of action under ERISA § 502(a)(3) to recalculate benefits already paid is most analogous to a contract claim and thus is subject to a six-year statute of limitations, Mass. Gen. Laws ch. 260, § 2. Given that the statute of limitations for contracts applies to claims in this District under ERISA § 502(a)(1)(B), this Court sees no reason why the limitation on wages would be appropriate for a claim under ERISA § 502(a)(3) if it is not appropriate under ERISA § 502(a)(1)(B); in other words, ERISA § 502(a)(1)(B) and ERISA § 502(a)(3) are not so different as to justify analogizing one to a wage claim and the other to a contract claim. Both causes of action focus on the plan—a contract—and the only difference is whether the parties focus their arguments on the words of the plan as they *are* written or as they *should have been* written in accordance with the statute. Whether the parties are arguing from the words of the plan or the words of the statute, however, has no bearing on whether the claim is more analogous to a contract claim or a wage claim. Thus, this Court adopts the analogy already drawn in this District. Indeed, if this Court were to analogize one cause of action to a wage claim and the other to a contract claim without identifying a significant distinction between the two causes of action, litigants simply would dispute the proper characterization of their causes of action, which would result in wasteful litigation tangential to the merits. *Cf. Wilson,* 471 U.S. at 271–75, 105 S.Ct. 1938 (directing courts to apply single state statute of limitations for all section 1983 claims to promote uniformity, certainty, and efficiency); *Sandberg v. KPMG Peat Marwick, L.L.P.,* 111 F.3d

331, 334–35 (2d Cir.1997) (unifying statute of limitations applicable to claim for discrimination under ERISA § 510).

In summary, federal law provides no statute of limitations for a cause of action under ERISA § 502(a)(3) to recalculate benefits in accordance with the requirements of ERISA, so courts must look to the most analogous state statute of limitations, which this Court concludes is the six-year limitation on contracts.

## 2. Accrual

Much more significant than the appropriate statute of limitations is the point when the statute of limitations began to run, a question of federal common law. *Salcedo*, 38 F.Supp.2d at 42; *see also Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47–48 (2d Cir. 1999); *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330–31 (8th Cir.1998); *cf. Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992) (section 1983 claim). *See generally* 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4519, at 622 & n. 74 (2d ed. 1996 & Supp.2000) (collecting cases).

In general, a statute of limitations is measured from the date the cause of action "accrued," and thus this discussion will use the word "accrued" to mean nothing more than when the statute of limitations began to run. The word "accrued" might also refer to when a plaintiff first had a legal right to bring a claim, but this discussion will use the word "arose" for that purpose, even though the word "arose" could be used to refer to when the wrong occurred. *Cf. Heinrich ex rel. Heinrich v. Sweet*, 118 F.Supp.2d 73, 79–81 (D.Mass.2000) (distin-

guishing "arose" from "accrued"). In this case, the wrong occurred in 1976 when the Plan adopted the illegal terms; a cause of action arose with respect to each class member as soon as he joined the Plan (or in 1976, if he joined the Plan before then), at which time he could have forced the Plan to conform with ERISA; and each class member actually was "injured," for lack of a better word, when he received a lump sum distribution that was less than that required by law. Given the dates when the wrong occurred, when the causes of action arose, and when the class members actually were injured, when did the causes of action accrue, thus triggering the statute of limitations?

Blue Cross cites *Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888 (1st Cir.1978), *cited with approval in Quinn v. Country Club Soda Co.*, 639 F.2d 838, 841 (1st Cir.1981), for the proposition that all of the causes of action in this case accrued in 1976, when the wrong occurred. Def.'s Mem. II at 11–13.[26] In *Cowan*, the plaintiff was hired in 1964; the plan in question was amended on November 4, 1974; the plaintiff was terminated on November 19, 1974; the plaintiff was paid his benefits on January 2, 1975; and the plaintiff demanded additional benefits in 1977, which were denied. *Cowan*, 586 F.2d at 889–90. The issue before the court was whether ERISA supplied the court with federal jurisdiction by preempting state law. Thus, the court had to interpret ERISA § 514(b)(1),[27] which states that ERISA preemption does not apply to "any cause of action which arose, or any act or omission which occurred, before January 1, 1975," *id.* The court stated:

---

**26.** "Def.'s Mem. II" refers to Blue Cross' Memorandum in Support of Its Motion for Judgement Based on a Written Record, Barring Non–Timely Claims [Docket no. 36].

**27.** 29 U.S.C. § 1144(b)(1).

The basic wrong that [the plaintiff] complains of ... was not done when he was refused benefits in 1977 but occurred earlier, when the [Plan] was promulgated. Thereafter the trustees could be expected to administer the Plan in accordance with its terms. To find that [the plaintiff's] cause of action arose when the trustees denied his request in 1977 would require holding that they committed a breach of fiduciary duty by not disregarding the explicit terms of the controlling trust instrument. We think the more realistic analysis of [the plaintiff's] allegations is that the wrong, if any, was done when the [Plan] amendment was adopted in 1974.

*Cowan,* 586 F.2d at 895. Upon inspection of the facts and issues in *Cowan,* it is apparent that *Cowan* is not relevant to this case. *Cowan* was not concerned with when a statute of limitations began to run but rather with when ERISA came into effect. In other words, and consistent with the terminology used throughout this discussion, *Cowan* addressed when the plaintiff's cause of action *arose* as opposed to when it *accrued.* Other courts have grasped the distinction that Blue Cross does not:

Determination of the time of accrual reflects principally considerations of fair notice to plaintiffs (protecting unwary litigants against the inadvertent loss of benefits through the running of the statute of limitations), and judicial economy (avoiding premature or piecemeal litigation). Determination of the preemption effect of material pre-ERISA conduct reflects principally considerations of fairness to defendants (avoiding retroactive application of remedial principles not in effect at the time of the conduct in question). Because of the differing interests at stake, therefore, the post-ERISA event triggering plaintiff's right to sue (i.e. accrual) may be only a for-

mality (such as an official denial of benefits), while the events actually at issue in the litigation, having occurred long before, must be judged under pre-ERISA state-law principles.

*Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1500 (9th Cir.1984), *examined in Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund,* 979 F.2d 444, 450–53 (6th Cir.1992). In short, *Cowan* has no bearing on when the causes of action in this case accrued.

Putting aside the question of exhaustion of internal remedies, the outer limits of when the causes of action might have accrued are fairly clear. At one extreme, a cause of action cannot accrue before it arises, so the earliest possible date of accrual for each class member came when he joined the Plan (or 1976, if he joined the Plan before then); at the other extreme, each class member knew as much as he ever reasonably would know about his injury at the time he received his lump sum distribution, so the latest possible date of accrual for each class member came when he actually was injured. Within these outer limits, the parties disagree on when the causes of action accrued.

In general, a cause of action does not accrue under ERISA until there has been a denial of benefits. *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 51–52 (1st Cir.1999) (dictum), *cert. denied,* 528 U.S. 1161, 120 S.Ct. 1174, 145 L.Ed.2d 1082 (2000); *Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 223–24 (1st Cir.1996); *Quinn,* 639 F.2d at 840; *Salcedo,* 38 F.Supp.2d at 42–45. At the same time, several courts of appeals have determined the date of denial by applying the discovery rule, which asks when the plaintiff knew, or reasonably should have known, about the injury that is the basis of his cause of action. This Court will as-

sume that a discovery rule is appropriate for ERISA claims. Under the discovery rule, a denial of benefits need not be formal, so long as the denial is clear. *Carey,* 201 F.3d at 47–49; *Beckham,* 138 F.3d at 330–31; *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 65–67 (7th Cir.1996). In this case, where the Plan is clear, but also clearly illegal, the question is whether each class member reasonably should have known at the moment he joined the Plan that he had a cause of action.

■ This Court holds that the class members did not receive a clear denial of their benefits, and thus their causes of action did not accrue, at the moment they joined the Plan. *Compare DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund,* 975 F.Supp. 258, 265 & nn. 8–9 (S.D.N.Y.1997) (refusing to hold that cause of action accrued upon enactment of illegal plan), *cited with approval in Miele v. Pension Plan of N.Y. State Teamsters Conference Pension & Ret. Fund,* 72 F.Supp.2d 88, 98–99 (E.D.N.Y.1999), *with Bolduc v. Nat'l Semiconductor Corp.,* 35 F.Supp.2d 106, 119–20 (D.Me.1998) (holding that claim accrued when plaintiff was hired because he was informed clearly upon hiring that he would not receive benefits), *distinguished by Conners v. Me. Med. Ctr.,* 42 F.Supp.2d 34, 49 n. 4 (D.Me.1999). To be sure, Blue Cross has a strong argument to the contrary: All the facts in this case have remained the same since 1976, each class member had access to all the facts upon joining the Plan, and only ignorance of the law—which generally is no excuse—prevented each class member from pursuing a claim against the Plan. On the other hand, when a participant joined the Plan, it was totally speculative whether or not he would be eligible for, much less receive, a lump sum distribution, given the particular limitations the Plan places on lump sum distributions. Blue Cross is correct that federal courts in Massachusetts have applied a discovery rule that excuses delay in bringing suit only if the relevant facts are "inherently unknowable," *compare Geo. Knight & Co. v. Watson Wyatt & Co.,* 170 F.3d 210, 213 (1st Cir.1999) (applying "inherently unknowable" formulation of Massachusetts discovery rule), *with Cambridge Plating Co. v. Napco, Inc.,* 991 F.2d 21, 26–27 (1st Cir.1993), *aff'd in part, vacated in part* 85 F.3d 752 (1st Cir.1996) (questioning "inherently unknowable" formulation and noting that discovery rule is to protect, not harm, plaintiffs), *and Williams v. Ely,* 423 Mass. 467, 473 n. 7, 668 N.E.2d 799 (1996) (conflating the "inherently unknowable" and "knew or should have known" standards), but Blue Cross only identifies federal courts that were sitting in diversity. Faced with a purely federal question, this Court sees no reason why Blue Cross's argument would be appropriate for ERISA § 502(a)(3) if it is not appropriate for ERISA § 502(a)(1)(B) as matter of federal common law; again, this Court does not consider ERISA § 502(a)(1)(B) and ERISA § 502(a)(3) so different as to justify such radically different treatment. The two causes of action differ in that one depends on a defendant's interpretation of the plan, while the other depends on a court's interpretation of the law, yet the causes of action do not differ significantly with respect to when they could be brought to court. ERISA § 502(a)(1)(B) specifically provides that a participant may "clarify his rights to *future* benefits under the terms of the plan" (emphasis added), yet no court has used this language to run the statute of limitations from the date that a participant joined his plan. If a cause of action does not accrue under ERISA § 502(a)(1)(B) at the first moment a participant has a legal right to maintain an action, then neither should a cause of action under ERISA

§ 502(a)(3) accrue at the earliest possible date.

This Court holds that each class member's cause of action accrued, at the earliest, when he received his lump sum distribution. *See Miele,* 72 F.Supp.2d at 99; *DeVito,* 975 F.Supp. at 265 & nn. 8–9. "'To hold otherwise would require lay participants and beneficiaries to be constantly alert for 'errors and abuses that might give rise to a claim and start the statute of limitations running.'" *Kiefer,* 976 F.Supp. at 842–43 (quoting *Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 71 (4th Cir. 1989) [quoting *Menhorn,* 738 F.2d at 1501] ). The lump sum distribution represents the actual injury to each class member and marks the time after which delay in seeking redress would be unreasonable. The parties agree that were the claim brought under ERISA § 502(a)(1)(B), the cause of action would not accrue until the plan denied the participant's claim for benefits. This Court holds that a claim for recalculation of benefits is not sufficiently different from a claim for benefits under the terms of the plan as to justify a different accrual rule. The question remains, however, how this Court should adjust the accrual rule to account for time spent pursuing internal remedies. If a class member did *not* seek internal remedies, whether intentionally or not, this Court will not extend the statute of limitations by assuming that the class member exhausted his internal remedies some arbitrary number of days after the lump sum distribution. Thus, each class member's cause of action

accrued when he received his lump sum distribution *unless* he sought internal remedies.

It is not clear whether a participant must exhaust internal remedies before bringing a statutory-based claim under ERISA § 502(a)(3). Under ERISA § 503,[28] a plan must consider and respond to a participant's claim for benefits, whether plan-based or statutory-based, but ERISA § 503 does not explicitly require participants to exhaust their internal remedies. Thus, it is clear that participants *may* seek internal remedies for statutory-based claims, but courts disagree on whether participants *must* exhaust their internal remedies for statutory-based claims. *See Drinkwater,* 846 F.2d at 825–26 (requiring exhaustion of internal remedies for plan-based, but not necessarily for statutory-based, ERISA claims); *see also Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 418 n. 6 (6th Cir.1998) (noting that some circuits require, or give district court discretion to require, exhaustion for statutory-based ERISA claims); *Santana v. Deluxe Corp.,* 12 F.Supp.2d 162, 175 (D.Mass.1998) (Freedman, J.) (noting that exhaustion doctrine applies as matter of judicial discretion and indicating preference for exhaustion of internal remedies for all ERISA claims regardless of their nature) (dictum); *McLean Hosp. Corp. v. Lasher,* 819 F.Supp. 110, 121–23 (D.Mass. 1993) (Nelson, J.) (noting distinction between plan-based and statutory-based claims under ERISA) (dictum); *cf. Smith*

---

**28.** 29 U.S.C. § 1133. This section provides:
    In accordance with regulations of the Secretary, every employee benefit plan shall—
    (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

    (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
    *Id.; see also* 29 C.F.R. § 2560.503–1 (detailing required claims procedures).

*v. Sydnor,* 184 F.3d 356, 364 (4th Cir.1999) (joining growing number of courts that do not require exhaustion for claims alleging breach of fiduciary duty under ERISA), *cert. denied,* 528 U.S. 1116, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000); *Treadwell v. John Hancock Mut. Life Ins. Co.,* 666 F.Supp. 278, 284 (D.Mass.1987) (Caffrey, J.) (same).

This Court believes that participants should be encouraged, although not required, to seek internal remedies for their statutory-based claims brought under ERISA § 502(a)(3) to promote judicial economy and to prevent an unnecessary gap between plan-based and statutory-based claims. Participants should not be required, however, to seek internal remedies because a plan, like the one in this case, might be clear on its face, but also clearly illegal, in which case internal remedies would lead to an obvious result, but one that is not entitled to any deference by a court. This Court need not decide the question, however, because Laurenzano, the lead plaintiff, in fact exhausted his internal remedies. Compl. ¶ 15; Answer ¶ 15. As for those class members who did not exhaust their internal remedies, their claims normally would be untimely, *Terry v. Bayer Corp.,* 145 F.3d 28, 40 (1st Cir. 1998), but because this is a class action, all that matters is whether the lead plaintiff has exhausted his remedies. *Cf. Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) ("[B]ackpay may be awarded on a class basis under Title VII without exhaustion of administrative procedures by the unnamed class members."). Whether class members exhausted their internal remedies at some point in the past does not promote judicial economy in this proceeding and any attempt at this late date to seek internal remedies would be futile, *Drinkwater,* 846 F.2d at 826, and should not now be required. On the other hand, those class members who did seek internal remedies should not now be penalized by a shorter statute of limitations. *But cf. Radford,* 151 F.3d at 399–400 (refusing to toll statute of repose during exhaustion of internal remedies for claim under ERISA §§ 413 and 502[a][3]). With these considerations in mind, this Court holds that for those class members who sought internal remedies, their causes of action did not accrue until they exhausted their internal remedies.

In summary, under federal law, a cause of action under ERISA § 502(a)(3) to recalculate benefits accrues upon distribution of the benefits, unless the participant chooses to seek internal remedies, in which case the cause of action accrues upon exhaustion of the internal remedies.

## IV.  Conclusion

For the reasons set forth above, Laurenzano's motion for judgment on the written record [Docket no. 26] is GRANTED and Blue Cross's motions for judgment on the written record [Docket nos. 31, 35] are DENIED.